**Affirmed and Opinion filed October 25, 2012.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-00806-CV

---

**TAMIKA NASHAE DAVIS AND ELIZABETH ANN DAVIS, Appellants**

**V.**

**PROSPERITY BANK, Appellee**

---

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2010-24634**

---

## OPINION

This is an appeal from a summary judgment in favor of a bank on claims for alleged false imprisonment, malicious prosecution, and defamation arising from the

bank's handling of an incident involving a counterfeit check. We affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs/appellants Tamika Nashae Davis and her mother Elizabeth Ann Davis (collectively, the "Davises") brought suit against defendant/appellee Prosperity Bank, seeking to recover damages for various tort claims.

According to the pleadings, Tamika received a check for $2,900 from an out-of-state individual who purchased used furniture from Tamika through an online listing.[1] The purchaser allegedly sent Tamika the check with email instructions that she should cash the check, keep $350 for the cost of the furniture and an additional $100 for herself, and send the rest of the money via Western Union to another individual who was responsible for shipping the furniture.

The record does not reflect that Tamika had a checking account at any bank. Even though Tamika did not have an account of any kind at Prosperity Bank and even though the check was not drawn on Prosperity Bank, Tamika took the check to Prosperity Bank. Apparently, the face of the check indicated that it was drawn on "First Prosperity Bank." According to the Davises, Tamika's purpose was to ask Prosperity Bank about the validity of the check, whether Prosperity Bank was the correct bank, and whether there were sufficient funds in the account. The record reflects that upon her arrival at the drive-through window at Prosperity Bank, Tamika presented the check and her identification to the bank teller. Tamika did not endorse the check. Tamika asserts that she only had a question about the check and offered the check and her identification to the teller when the teller asked to see the check.

---

[1] Although the record reflects that Tamika received two checks in two, separate packages for the sale of the furniture, only one of the checks resulted in charges, which were the focus of the proceedings in the trial court.

The record reflects that employees at Prosperity Bank believed the check was counterfeit and that Tamika was attempting to cash it. Prosperity Bank contacted the bank on which the check appeared to be drawn; that bank confirmed the check was counterfeit. Prosperity Bank immediately notified law enforcement authorities and informed authorities that Tamika had presented a check for negotiation that the bank believed was fraudulent.

As alleged by the Davises, while Tamika was still at Prosperity Bank, an officer from the Houston Police Department approached Tamika's vehicle and asked Tamika to pull her vehicle into the parking lot. Tamika did as she was asked and waited in the parking lot; the officer later returned to the vehicle and asked Tamika to accompany him to a conference room inside Prosperity Bank, where the bank manager and law enforcement officers were gathered. According to the pleadings, Tamika was informed that she was being arrested because the check was signed by an unauthorized person. Officers placed Tamika in handcuffs and placed her under arrest. The Davises alleged that the manager of Prosperity Bank and other bank employees provided inaccurate and false information to the police officers, resulting in Tamika's arrest, and that the bank manager, with malice, directed the officers to arrest Tamika.

Tamika's mother Elizabeth Ann, who owned the vehicle that Tamika had driven to Prosperity Bank, arrived at the bank, saw Tamika in the officers' custody, and attempted to retrieve the vehicle; but the vehicle was eventually towed from the bank's parking lot. In the meantime, Tamika was charged with felony forgery and transported to the city jail, where she was confined for three days before being released on bond.

As reflected in the record, a grand jury subsequently indicted Tamika on charges of forgery stemming from the presentation of the check to Prosperity Bank. The charges against Tamika were later dismissed.

The Davises brought suit against Prosperity Bank, asserting claims for malicious prosecution, negligence and gross negligence, intentional infliction of emotional distress,

3

defamation, and false imprisonment. After filing an answer, general denial, and affirmative defenses, Prosperity Bank filed a traditional and no-evidence motion for summary judgment. The trial court granted summary judgment in favor of Prosperity Bank on the claims for negligence and gross negligence and intentional infliction of emotional distress. The trial court denied summary judgment on the claims of false imprisonment, malicious prosecution, and defamation.

Prosperity Bank subsequently filed a traditional motion for summary judgment on the remaining claims of false imprisonment, malicious prosecution, and defamation. Prosperity Bank included as attachments to this motion excerpts from the deposition testimony of the two arresting officers, a former assistant district attorney, and Tamika. The Davises filed a response that included an expert witness report, a transcript of Tamika's deposition testimony, Elizabeth Ann's affidavit, the offense report, and an affidavit from an individual familiar with the practices of the banking industry. The trial court granted Prosperity Bank's motion for summary judgment, ruling in the bank's favor on Tamika's claims for false imprisonment, malicious prosecution, and defamation.

## ISSUE PRESENTED

In a single appellate issue, the Davises assert that the trial court erred in granting summary judgment in favor of Prosperity Bank on the claims for false imprisonment, malicious prosecution, and defamation because genuine issues of material fact exist. Tamika also claims Prosperity Bank's second motion for summary judgment was "frivolous" because it was based on the same arguments previously denied by the trial court in Prosperity Bank's first motion for summary judgment.

## ANALYSIS

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d

22, 23 (Tex. 2000). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

### *False-Imprisonment Claim*

To establish a claim for false imprisonment, a claimant must show: (1) willful detention, (2) without consent, and (3) without authority of law. *See Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002); *Bossin v. Towber*, 894 S.W.2d 25, 29 (Tex. App.—Houston [14th Dist.] 1994, writ denied). In the summary-judgment motion the trial court granted, the only element that Prosperity Bank sought to conclusively negate was the first element. Although no employee of Prosperity Bank participated in Tamika's arrest and detention, any conduct that was intended to cause the detention of another, and in fact caused the detention, may satisfy the first element of the false-imprisonment claim. *See Rodriguez*, 92 S.W.3d at 507. Courts sometimes have referred to such conduct as "instigation" of the false imprisonment. *See id.* To prove instigation by the bank, the Davises would have to show that the bank clearly directed or requested an officer to carry out the arrest. *See id.*

In support of their argument that Prosperity Bank requested or directed the officers to arrest Tamika, the Davises refer to the deposition testimony of one of the arresting officers in which the officer states that an employee at Prosperity Bank called another

5

employee associated with the bank and advised the officers that the bank would "go forward" with the charges. The arresting officer's statement reflects in relevant part:

> I then talked to the bank manager and told them the District Attorney had approved the charges being filed. That person had to call someone else with the bank and then advised us they would go forward. . . . Nobody at the bank was requesting that we arrest Ms. Davis either before or after we talked to DA Intake.

The officer's statement does not support the Davises' claim that Prosperity Bank requested or directed Tamika's arrest. As reflected in the officer's statement, it was only after the district attorney had approved the charges that the bank indicated a desire to "go forward" with the charges; the Davises do not dispute this fact. Merely reporting a crime and identifying a suspect to law enforcement authorities is not a request or directive to arrest a suspect and is insufficient to establish liability for instigating subsequent false imprisonment. *Id.* Even if the reporting party mistakenly identifies the wrong person, giving information to police about the commission of a crime is not instigation as long as the reporting party leaves the decision to arrest with the responding law enforcement officers without persuading or influencing the officers. *Id.* at 507–08.

Additionally, the deposition testimony of the former assistant district attorney involved in authorizing Tamika's arrest reflects that the decision to arrest Tamika fell within the sole discretion of the "intake" at the district attorney's office to find probable cause supporting the arrest based on the information supplied by the officers. According to the assistant district attorney's testimony, when she was asked whether the bank's choosing to "go forward" on the charges impacted her decision to arrest Tamika, the assistant district attorney stated that it meant nothing to the decision to accept the forgery charges against Tamika because her decision was based on the information the officers provided.

The Davises point to their expert-witness report in which the expert witness criticized the assistant district attorney's testimony and characterized her testimony as confusing the officers' authority to arrest with the district attorney's authority to accept

6

charges against an individual. Even if the assistant district attorney had confused the law, it has no bearing on the undisputed facts that the district attorney's office had sole discretion as to whether probable cause existed to support and authorize Tamika's arrest and that the officers arrested Tamika without influence or pressure from the bank. *See id.* at 510–11; *Dangerfield v. Ormsby*, 264 S.W.3d 904, 911–12 (Tex. App.—Fort Worth 2008, no pet.) (referring to "causation" in terms of "instigating" an arrest and citing *Rodriguez*).

The Davises also refer to Elizabeth Ann's affidavit, stating that bank employees told officers to arrest Tamika and press charges. According to the affidavit, Elizabeth Ann arrived on the scene just as the officers in the patrol unit were about to drive away with Tamika; there is no evidence that Elizabeth Ann heard these purported statements by the bank employees to the officers. An affidavit in support of summary-judgment must show affirmatively that it is based on the affiant's personal knowledge and may not be based on hearsay. *See Wiggins v. Overstreet*, 962 S.W.2d 198, 201 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). To the extent the Davises rely on Elizabeth Ann's statement that the bank requested Tamika's arrest, the affidavit is not based on personal knowledge because the knowledge was gained by the statements of others and Elizabeth Ann stated that she arrived on the scene after Tamika had been arrested and placed in a patrol unit. *See id.* Nevertheless, the undisputed facts reflect the officers arrested Tamika as a result of the assistant district attorney's sole discretion to bring the forgery charges against Tamika because the arrest came only after the assistant district attorney made the decision to charge Tamika with forgery. *See Rodriguez*, 92 S.W.3d at 509 (noting a "causation" standard in instigating an arrest); *Dangerfield*, 264 S.W.3d at 911–12. The assistant district attorney testified that even if the bank had requested to "go forward" with the charges and arrest before she made the decision, the request would have meant nothing to her sole decision to bring the charges against Tamika and authorize Tamika's arrest. There is no evidence that the officers acted on the bank's

7

indication that it wished to "go forward" in lieu of the assistant district attorney's decision to bring charges against Tamika.

The Davises also contend that employees at Prosperity Bank instigated Tamika's imprisonment by knowingly supplying false information to the officers, resulting in Tamika's arrest. The Davises did not identify what false information they claim was given to the officers in either the summary-judgment pleadings or in their appellate brief. The Davises refer to the testimony of an expert witness that the arresting officers relied on false information provided by employees at Prosperity Bank; the expert witness did not identify what "false information" was allegedly knowingly given to the officers. The expert report refers only to the fact that employees of Prosperity Bank called authorities and "reported a 'crime'" and that the officers relied on statements of the bank employees concerning the incident. Liability for instigating a false imprisonment does not extend to a private citizen who merely reports a crime and identifies a suspect to law enforcement authorities. *Rodriguez*, 92 S.W.3d at 507. Likewise, providing inaccurate or incomplete information will not result in liability for instigating a subsequent false imprisonment. *Id.* at 509–510, 510–11. A third party will not be liable for instigating a false imprisonment unless the third-party knowingly provides false information resulting in arrest. *Id*. at 509.

The undisputed circumstances and factual context of this case reflect that Tamika, who did not have a checking account at Prosperity Bank and was not a customer of Prosperity Bank, entered the bank's premises to make inquiries about the check and whether sufficient funds existed to cover it. Upon the teller's request, Tamika offered her driver's license and the unindorsed check, stating that she had a question about it. Under these circumstances, the bank teller reasonably could infer that Tamika was seeking to cash the check. The summary-judgment evidence includes an officer's offense report, which provides in part that the branch president stated that Tamika arrived at the bank's drive-through window and sent her identification and the check through the transaction tube, "asking the teller to cash [the check]." When viewing the summary-judgment

8

evidence in the light most favorable to the Davises, at best, the evidence supports an inference that the bank employees mistakenly believed that Tamika was attempting to cash the check and reported it to law enforcement authorities. Nevertheless, even assuming that the bank employees were mistaken in their conclusion that Tamika was attempting to cash the check and reported her actions as a crime, the law will not permit an inference to be drawn that Prosperity Bank requested or directed Tamika's arrest, amounting to a "willful detention" for false imprisonment. *See Rodriguez*, 92 S.W.2d at 507; *Ross v. Bank of America*, No. 01-03-00706-CV, 2004 WL 1277584, at *4 (Tex. App.—Houston [1st Dist.] June 10, 2004, no pet.) (mem. op.). Under the circumstances, context, and undisputed facts, neither the summary-judgment evidence nor any reasonable inferences drawn therefrom, support the Davises' allegations that Prosperity Bank provided the district attorney or the officers with information the bank knew to be false or that the assistant district attorney relied on any false information knowingly provided by Prosperity Bank in authorizing the charges for Tamika's arrest. *See Rodriguez*, 92 S.W.2d at 507; *Ross*, 2004 WL 1277584, at *4. It is not enough that the bank gave information, even if it was inaccurate, to law enforcement authorities about the commission of a crime or accused Tamika of committing a crime so long as the bank left the decision to arrest Davis with the responding officers without persuading or influencing the officers. *See Rodriguez*, 92 S.W.2d at 509–10.

The summary-judgment evidence establishes, as a matter of law, that no fact issues were raised as to whether employees at Prosperity Bank requested or directed Tamika's arrest, amounting to a willful detention. *Id*. at 510–11. The Davises' queries as to whether Prosperity Bank "had anything to do with" her arrest have no bearing on the undisputed facts that the arresting officers were acting solely at the discretion of the assistant district attorney in arresting Tamika and that there is no evidence that the bank knowingly provided false information, upon which the assistant district attorney relied in accepting charges against Tamika, resulting in Tamika's arrest. *See id*. at 509; *Ross*, 2004 WL 1277584, at *4. The trial court did not err in rendering summary judgment in

favor of Prosperity Bank on the Davises' claims for false imprisonment.  *See Ross*, 2004 WL 1277584, at \*4.

### *Malicious-Prosecution Claim*

The Davises assert that they raised a genuine issue of material fact to defeat Prosperity Bank's motion for summary judgment on Tamika's claims for malicious prosecution.  To prevail on a malicious-prosecution claim, a plaintiff must establish the following elements:   (1) the commencement of a criminal prosecution against the plaintiff; (2) causation (initiation or procurement) of the action by the defendant; (3) termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) the absence of probable cause for the proceedings; (6) malice in filing the charge; and (7) damage to the plaintiff.  *See Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997).  The only ground that Prosperity Bank asserted was conclusively negated by the summary-judgment evidence was the second ground.

It is undisputed that criminal prosecution for forgery was commenced against Tamika.   Causation is established by proof that a person initiates or procures a prosecution by filing formal charges against a party.  *See Browning-Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 292 (Tex. 1994).   There is no evidence that Prosperity Bank initiated the criminal prosecution by filing a formal charge or complaint of any kind.  *See id.*  A party procures a criminal prosecution if that party's actions are enough to cause the prosecution, and but for those actions, the prosecution would not have occurred.  *See Rodriguez*, 92 S.W.3d at 509.   Regarding causation, a person cannot be liable for malicious prosecution when the decision to prosecute is left to the discretion of another, such as a law enforcement official or a grand jury, unless the person knowingly provided false, material information and the false information caused a criminal prosecution.  *King v. Graham*, 126 S.W.3d 75, 76–79 (Tex. 2003) (per curiam).  Therefore, to prevail on the claim, Tamika would have to have shown that the prosecutor acted based on false

information knowingly provided by Prosperity Bank and that the decision to prosecute would not have been made but for the false information. *See id.*

The Davises allege that Prosperity Bank initiated prosecution "by reporting a 'crime.'" A person procures criminal proceedings by providing information that the person knows to be false. *Rodriguez*, 92 S.W.3d at 509 (noting that rule requiring "knowingly providing false information" for instigating an arrest in a false-imprisonment context is similar to the rule in a malicious-prosecution context to procure criminal proceedings). The Davises assert that employees of Prosperity Bank made statements to the arresting officers concerning the incident to commence the prosecution; they point to an arresting officer's statement that the bank agreed to "go forward with" the charges. This is not the case where the only information the assistant district attorney had was the bank employees' claims that Tamika was attempting to cash a counterfeit check. *See King*, 126 S.W.3d at 79 (providing that an inference could be drawn if the only evidence the official had in deciding to prosecute was false). Rather, the evidence, context, and circumstances reflect that Tamika approached Prosperity Bank, where she was neither a customer nor had any account, asking whether it was the correct bank and whether sufficient funds existed in the account to cover the check, which undisputedly was a fraudulent check. None of the summary-judgment evidence, including the particular circumstances and context of this case, and no inferences drawn from that evidence, support the Davises' assertions that bank employees knowingly provided false, material information to the officers. *See Rodriguez*, 92 S.W.3d at 510. Likewise, the Davises point to no evidence that the decision to prosecute, made by the assistant district attorney or the grand jury, was based on any information supplied by the bank that was known to be false. *See King*, 126 S.W.3d at 78. The trial court did not err in rendering summary judgment in favor of Prosperity Bank on the Davises' claims for malicious prosecution. *See King*, 126 S.W.3d at 79.

11

## *Defamation Claim*

The Davises assert that more than a scintilla of evidence supports their claim for defamation. To establish a claim for defamation, a plaintiff who is a private individual must prove that the defendant (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with negligence regarding the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). To prevail on its summary-judgment motion as to defamation, Prosperity Bank had to conclusively disprove at least one essential element of Tamika's defamation claim. *See id.* In its motion, Prosperity Bank challenged all three elements.

Nowhere in the Davises' pleadings, their summary-judgment responses, or in their appellate brief have they identified any specific statements they claim to be defamatory that were made by bank employees about Tamika to the arresting officers. *See Bell v. Bennett*, No. 02-10-00481-CV, 2012 WL 858603, at *9, 11 (Tex. App.—Fort Worth Mar. 15, 2012, no pet.) (mem. op.) (providing that no statement was ever identified as being published by the defendant to support a defamation claim). In their summary-judgment response, the Davises referred generally to the arresting officer's offense report; but they did not identify any particular statement as the basis for the defamation claim. To the degree the Davises suggest, both in response to the summary-judgment motion and on appeal, that the bank caused Tamika to be arrested and handcuffed, and this amounts to defamation, we reject this notion. In support of this argument, the Davises refer to the affidavit of an individual familiar with the practices of the banking industry, in which she states that "[i]t is not within the usual and customary norms to arrest someone who was only trying to verify the validity of the check." The Davises provide no case law in support of the assertion that causing a person to be handcuffed or arrested is defamatory. Independent research has yielded no Texas case law holding that actions can be considered as statements for the purposes of a defamation claim. *See Moore v. City of DeSoto*, No. 3:09-CV-0710-K, 2010 WL 3855306, at *4 (N.D. Tex. Sept. 29, 2010)

12

(providing that a defamation claim based on handcuffing has no merit). This evidence is insufficient to defeat summary judgment. *See id.*

In support of their argument that they presented more than a scintilla of evidence to defeat summary judgment on their defamation claim against Prosperity Bank, the Davises refer to the expert-witness report as stating that the bank employees "initiated the criminal prosecution by calling the police and reporting a 'crime'" and that the "police officers relied on the statements that the employees of Prosperity Bank made concerning the incident to commence prosecution." The expert witness, in the report, upon which the Davises rely, did not identify any statements alleged to be defamatory. Expert opinions must be supported by facts in evidence and not simply based on conjecture. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 729 (Tex. 2003); *see also United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997) (per curiam) (noting that supporting and opposing affidavits, under Rule 166a(f), must set forth facts as would be admissible in evidence). An expert witness's guesswork is not competent evidence to defeat a motion for summary judgment. *See HIS Cedars Treatment Ctr., Inc. v. Mason*, 143 S.W.3d 794, 803 (Tex. 2004). The trial court did not err in granting summary judgment on the defamation claim in favor of Prosperity Bank.

### *Assertion That Second Summary-Judgment Motion Was Frivolous*

The Davises also assert that Prosperity Bank's second motion for summary judgment was frivolous because it was based upon the same arguments previously denied by the trial court in the bank's first summary-judgment motion. A motion is not frivolous merely because it is reurged after denial. The summary-judgment evidence that Prosperity Bank offered in support of the second motion is different from the evidence offered in support of the first motion. We find no merit in the argument that Prosperity Bank's second motion for summary judgment was frivolous.

We overrule the Davises' sole issue on appeal.

## CONCLUSION

Having concluded that the trial court did not err in granting summary judgment in favor of Prosperity Bank on the Davises' false-imprisonment, malicious prosecution, and defamation claims, we affirm the trial court's judgment.


/s/  Kem Thompson Frost
    Justice


Panel consists of Justices Frost, McCally, and Mirabal.[*]

---

[*]Senior Justice Margaret Garner Mirabal sitting by assignment.