# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 3, 2024

Lyle W. Cayce
Clerk

_____

No. 23-40281

_____

Jane Roe,

*Plaintiff—Appellant*,

*versus*

Leighton Paige Patterson; Southwestern Baptist
Theological Seminary,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:19-CV-179

_____

Before King, Ho, and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

Jane Roe, a former student at Southwestern Baptist Theological Seminary, alleges that she was sexually assaulted by a fellow student in 2015. *See, e.g.*, ROA.1482–85; 7057; 9731–35. She sued the Seminary and its president, Leighton Paige Patterson, for failing to protect her from the assaults and for allegedly defaming her after. She appeals the district court's

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

grant of summary judgment for Patterson and the Seminary on all claims. We now affirm in part and certify in part.

The district court, applying Texas law, produced two comprehensive and well-reasoned opinions. ROA.2410–26; 2489–93. We primarily agree with the district court's analysis and do not feel the need to address most of Roe's challenges, many of which are not responsive to the district court's decisions.

We only discuss two statements Roe alleges to be defamatory. The first statement comes from a press release by Patterson's lawyer. The press release stated that Roe "had given . . . many contradictory statements." ROA.9441. We agree with the district court that this statement could be defamatory by suggesting that Roe was untruthful. *See Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020) ("A defamatory statement is one that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.") (cleaned up)).

But Roe fails to prove damages resulting from this statement. *See D Mag. Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017) (noting damages as an essential element of a defamation claim). She recounts how reading various statements, including the press release, caused her mental pain and made her think about friendships she had lost due to the incidents. *See* Appellant's Br. 68–69. This evidence does not "directly demonstrate the nature, duration, and severity of the mental anguish, which caused a substantial disruption in the claimant's daily routine." *Exxon Mobil Corp. v. Hines*, 252 S.W.3d 496, 505 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 871 (Tex. App.—Dallas 2007, no pet.)). And allegations that Roe lost friendships generally do not show that she lost friendships from the particular statement at issue.

No. 23-40281

Because Roe failed to prove the elements of her claim surrounding the press release, the district court was correct to grant summary judgment for Patterson and the Seminary.

The second statement comes from a letter submitted by Seminary donors to the Seminary's Board of Trustees. The letter discussed several claims concerning Patterson's reputation and tenure at the Seminary, including his handling of Roe's allegations in 2015. It states that Roe's "allegations of rape were false," that she "had engaged in consensual sexual activities on more than one occasion . . . in public buildings at the Seminary," "that campus security were shown the nude pictures that she texted to the male student [who allegedly raped her]," and that Patterson "desire[d] to meet with her . . . and attempt to help her recant her false allegations of rape before she continued with such false statements to the police." ROA.8145. Roe alleges that these statements are defamatory.

For the reasons explained below, Patterson's potential liability for this statement depends on two questions: First, whether a person can be held liable for supplying defamatory material to a publisher. Second, if the answer to the first question is yes, whether Roe properly alleged such a claim. We lack clear authority on these two questions, and so we certify them to the Supreme Court of Texas.

### Certification from the United States Court of Appeals for the Fifth Circuit to the Supreme Court of Texas, Pursuant to Art. V, § 3-C of the Texas Constitution and Rule 58 of the Texas Rules of Appellate Procedure.

To the Supreme Court of Texas and the Honorable Justices Thereof:

No. 23-40281

## I.    Style of the Case

The style of the case in which this certification is made is *Roe v. Patterson*, No. 23-40281, in the United States Court of Appeals for the Fifth Circuit.  The case is on appeal from the United States District Court for the Eastern District of Texas.  Federal jurisdiction is based on diversity of citizenship.  Texas law applies to the substantive issues.

## II.    Background

For a detailed account of the facts, we respectfully refer to the district court's two opinions granting summary judgment.  *See Roe v. Patterson*, No. 4:19-CV-179, 2023 WL 2632803 (E.D. Tex. Mar. 25, 2023); *Roe v. Patterson*, 668 F.Supp.3d 582 (E.D. Tex. 2023).

## III.    Legal Issues

Roe contends that Patterson is responsible for the allegedly defamatory statements in the donor letter described above.  Even though Patterson did not sign the letter, Roe argues that he is vicariously responsible for its contents because his Chief of Staff, Scott Colter, was allegedly involved in its dissemination and preparation.

The summary judgment record contained evidence of Colter's involvement.  *See, e.g.*, ROA.8226–27; 8255; 8264; 8274–82; 9525–32; 9533–34; 9540–48.  Colter was well aware of the donors' intent to submit a letter to the Board.  He provided contact information for additional donors who might agree to sign the letter and weighed in on the timing and method of distribution.  He was copied on email threads discussing letter drafts.  And, according to a letter drafter, he provided "additional information about the 2015 event."  ROA.9540–48.

The summary judgment record also contained evidence that Colter undertook this involvement as an agent of Patterson.  He helped route the

letter to Patterson's lawyer for approval prior to its distribution, ROA.8255; 8274–82, and communicated Patterson's appreciation of the letter after. ROA.8306.  Patterson and his wife also directly expressed these sentiments to the letter drafters themselves.  ROA.8158; 9487.

We are persuaded that the summary judgment evidence creates a genuine issue over whether Colter was indeed acting as Patterson's agent and "for the accomplishment of the objective of the agency," *In re Lipsky*, 411 S.W. 530, 547 (Tex. App.—Fort Worth 2013, pet. denied) (citing *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 576, 578–79 (Tex. 2002) and *Louis v. Mobil Chem. Co.*, 254 S.W.3d 602, 610 (Tex. App.—Beaumont 2008, pet. denied)), during his involvement with the letter.  We would therefore decline to affirm the district court's judgment on those grounds.

It's less clear whether, assuming agency, Patterson can be liable for the allegedly defamatory statements in the letter.

First, assuming Patterson, though Colter, either directly drafted the language for the statements about Roe's allegations or gave those statements to the letter drafters for inclusion, is he liable for them?  There is not direct authority from the Texas Supreme Court on whether a person who supplies defamatory information to a third party is liable for any resulting publication.  Texas appeals courts have suggested that this theory may be legitimate.  *See Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 639–40 (Tex. App.—Houston [1st Dist.] 2002) ("Although a party is generally not liable for a republication of a defamatory statement by another, '[i]f a reasonable person would recognize that an act creates an unreasonable risk that the defamatory matter will be communicated to a third party, the conduct becomes a negligent communication, which amounts to a publication just as effectively as an intentional communication.'" (quoting *Marshall Field Stores, Inc. v. Gardiner*, 859 S.W.2d 391, 396 (Tex. App.—Houston [1st Dist.] 1993)).

Second, even if such liability is possible, did Roe properly allege it? In Roe's briefing on appeal, she argues that Patterson, through Colter, is responsible for the defamatory statements in the letter. But she does not argue that Colter actually made those statements, either by writing them directly in the letter or by giving them to the drafters. The Texas appeals courts seem agreed that "[t]o recover on [a defamation] claim, the plaintiff must identify the alleged defamatory statement and the speaker." *Ameen v. Merck & Co.*, 226 F. App'x 363, 370 (5th Cir. 2007) (citing *Abbott v. Pollock*, 946 S.W.2d 513, 520 (Tex. App.—Austin 1997, pet. denied)). *See also Davis v. Prosperity Bank*, 383 S.W.3d 795, 804 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (affirming grant of summary judgment in favor of defendant where plaintiffs failed to identify "any specific statements they claim[ed] to be defamatory") (citing *Bell v. Bennett*, No. 02-10-00481-CV, 2012 WL 858603, at *9, 11 (Tex. App.—Fort Worth Mar. 15, 2012, no pet.)); *Rogers v. Soleil Chartered Bank*, No. 02-19-00124-CV, 2019 WL 4686303, at *8–9 (Tex. App.—Fort Worth Sept. 26, 2019, no pet.) ("When a party predicates a defamation claim on a writing, traditional Texas pleading rules require the party to be specific about what statement was false.") (citing *Kahn v. Beicker Eng'g, Inc.*, No. 04-94-00823-CV, 1995 WL 612402, at *2 (Tex. App.—San Antonio Oct. 18, 1995, pet. denied)).

Here, Roe identifies an allegedly defamatory statement—the letter's references to her rape allegations—and also identifies an alleged speaker—Patterson, through Colter—but she does not identify the speaker as having made the statement. Nor does her evidence identify any statements made by Colter or show that he provided language for the letter, even if it does suggest involvement with the letter generally and the provision of background information about the operative events. Instead, what she seems to argue is that, because Colter helped with the letter, he is responsible for defamatory statements contained therein.

No. 23-40281

We are uncertain whether this is enough to assert and maintain a defamation claim under Texas law. We therefore conclude that certification is warranted.

## IV.    Questions Certified

We hereby certify the following questions of law to the Supreme Court of Texas:

1. Can a person who supplies defamatory material to another for publication be liable for defamation?
2. If so, can a defamation plaintiff survive summary judgment by presenting evidence that a defendant was involved in preparing a defamatory publication, without identifying any specific statements made by the defendant?

We disclaim any intent that the Texas Supreme Court confine its reply to the precise form or scope of the legal questions we certify. We transfer to the Texas Supreme Court the record and appellate briefs in this case with our certification. We retain this appeal pending the Texas Supreme Court's response.

For the foregoing reasons, we affirm the decision of the district court in part and certify the questions stated above to the Supreme Court of Texas.