**RIO GRANDE VALLEY GAS CO. v. CASKEY.**

No. 8496.

Court of Civil Appeals of Texas. San Antonio.

Nov. 26, 1930.

Rehearing Denied Jan. 7, 1931.

Tarlton & Lowe, of Corpus Christi, and Montgomery, Hall, Smith & Taylor, of Edinburg, for appellant.

Sidney P. Chandler, of Corpus Christi, for appellee.

FLY, C. J.

The appellee sued appellant to recover damages accruing from a libel uttered by appellant. A trial by jury, on special issues, resulted in a verdict and judgment in favor of appellee for $1.00 actual damages, and $250.00 exemplary damages.

The jury answered that appellee had not disposed of mortgaged property prior to September 17, 1928, which was the date of the letter on which the charge of libel is based; that appellee was indebted to appellant on said date; and that appellant was actuated by malice in writing the letter.

The cause of action was as follows:

"Plaintiff would respectfully show to the court that heretofore to-wit, on or about the 17th day of September, 1928, the defendant by and through its local agent H. Y. Barnett, at Edinburg, Texas, did, with the intent to cause the plaintiff financial injury and to impeach his honesty, integrity, and reputation, write a letter addressed to J. S. Carver, Corpus Christi, Texas, wherein the defendant accused the plaintiff of the crime of 'disposing of mortgaged property.'

"The plaintiff says that the defendant did not only accuse him by expressed language as well as by inference, of 'disposing of mortgaged property,' but inferred that it was going to have the plaintiff arrested upon a complaint 'for disposing of mortgaged property.'

"The plaintiff would further show to the court that the defendant in said letter accused the plaintiff of being dishonest and thereby by such writing used language tending to injure the reputation of this plaintiff as to his honesty and integrity and thereby exposing him to public hatred, contempt, and ridicule."

The letter alluded to is as follows:

"Dear Sir:

"We are informed that you have bought or contracted to buy the property here of R. U. Caskey, Lot 9, Block 146.

"It may be of interest to you to know that we have a mortgage on the water heater in this house and that he still owes us for the gas service line to this house, the total due on both is $50.99, and unless this is paid in the next few days we will repossess the water heater and we will not serve gas to anyone through this line.

"You will probably have trouble renting the house without gas and I have written Mr. Caskey advising him that we will start proceedings to recover the heater and also file complaint against him for disposing of mortgaged property.

"You understand the property is liable for the debt of the line."

It clearly appears from the allegations of the petition, herein fully copied, that the language of the letter is not copied and the allegations as to accusations of crime are mere conclusions of the pleader. That is not sufficient in a petition, at least in one charging libel. It is always necessary to set out in the petition the portions of a writing upon which a libel is based, not only where the libel arises by innuendo but where the language claimed to accuse the libeled party of a crime is direct and positive. Newell on Slander and Libel, § 751. The author says as to innuendo:

"§ 751. The Innuendo Defined.—An innuendo in pleading is an explanation of the defendant's meaning by reference to some antecedent matter. It is mostly used in actions for libel and slander. An innuendo as 'he, the said plaintiff meaning,' is only explanatory of some matter expressed; it serves to apply the slander to the precedent matter, but it cannot add or enlarge, extend or change the sense of the previous words, and the matter to which it alludes must always appear from the antecedent parts of the pleading."

In the cases of Bradstreet v. Gill, 72 Tex. 115, 9 S.W. 753, 754, 2 L. R. A. 405, 13 Am. St. Rep. 768, and Runge v. Franklin, 72 Tex. 585, 10 S. W. 721, 3 L. R. A. 417, 13 Am. St. Rep. 833, on what is necessary to be alleged in petitions seeking damages on the ground of libel, it is held that libel being in writing, the language can and should be set forth in hæc verba. The reason for such requirement is apparent.

The court should be informed of the libelous matter, and not be relegated to the opinions and conclusions of the pleader, and the defendant given an opportunity to answer the charge made against him. In the Bradstreet—Gill Case the Supreme Court said:

"It has been many times decided by our courts that the common-law distinctions as to pleading, and its technicalities, do not prevail with us, but that a clear and logical statement of the cause of action is all that is necessary. A clear statement of the facts constituting the cause of action cannot, however, be dispensed with. The character of the suit must be the guide to the pleader, and enough must be stated to constitute a cause of action. In a suit on a note it will be sufficient to state the substance and legal effect of the note. Not so in a suit for libel. A libel suit is based on language or its equivalent. The complaint in a libel suit should put the court in possession of the libelous matter published,—the language used, with such innuendoes as are necessary to explain what was meant by the language,—and to whom it applied, so as to enable the court to determine whether the words are actionable. In this case the complaint attempts to give the meaning of the words or libel only. * * * This is not a case where the pleader must, from the nature of the publication, resort to a verbal description of the slanderous matter, as it would be when movements, postures, or pictures are used. Plaintiff could have stated his cause of action as it was, in clear terms. He has not done so. It is not sufficient, in this kind of a suit, to state the substance of the language used, or its meaning. We believe the general demurrer ought to have been sustained."

The decisions cited have been often cited and followed in this state.

■■ A charge of libel is one accusing the defendant of an act criminal in its nature, and the allegations should clearly and definitely set out all the facts necessary to show the commission of the offense, and a naked conclusion drawn by the pleader from the writing may be a wrong and distorted opinion against which no defendant should be forced to answer and defend. It is easy to copy the libelous words and let the court and jury and not the plaintiff draw the conclusions therefrom. This case offers a good example of erroneous conclusions drawn from the writing of the defendant, for the letter does not charge appellee with having disposed of mortgaged property, but merely stated that he had written appellee that they would "file complaint against him for disposing of mortgaged property." The interpretation of that clause was that appellant had in his letter to Carver accused appellee of having disposed of mortgaged property. No such accusation was made to Carver, whatever may have been contained in the letter to appellee, which he admitted he received from appellant.

There is no evidence of malice upon the part of appellant. It sought nothing but its debt, which appellee admitted he owed, but the payment of which he was evading. It is clear that he used all means in his power to dispose of the mortgaged property, and that but for the timely interference of appellant the act would have been consummated and appellant's claim defeated. There was much more evidence in the voluntary affidavit of Carver, who swore that he had investigated the character of appellee and found that he did not pay his debts and was a man with whom he did not desire to have any dealings, than in the letter of appellant.

■ We do not think the letter was privileged, because the statement as to what he had written to appellant was totally unnecessary in the communication to Carver. Newell, Slander and Libel, § 608.

The jury in reality decided that appellee had not been damaged and that finding was sustained by the facts, and yet in the face of their verdict and contrary to the evidence they imposed a penalty of $250 on appellant. No malice was proved and there was not a circumstance from which malice might be inferred.

The judgment is reversed, and the cause remanded.