

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00124-CV
_____

RICHARD ROGERS & RRK REAL ESTATE INVESTMENTS & HOLDINGS,
LLC, Appellants

V.

SOLEIL CHARTERED BANK, Appellee

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-303257-18

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

This is an interlocutory appeal from the denial of a motion to dismiss filed pursuant to the Texas Citizens Participation Act (the TCPA or the Act). This appeal brings us what has become a routine scenario: one party is dissatisfied with another's services, the dissatisfied party posts negative information on the internet, the service provider considers the posted statements defamatory and sues, and the dissatisfied party (now the defendant) invokes the TCPA. Here, the parties presented the trial court with perfunctory efforts to deal with the TCPA issues, and the trial court denied the TCPA motions to dismiss. The dissatisfied parties invoking the TCPA made a sufficient showing to bring themselves within the sweeping orbit of the TCPA. The service provider as the responding party relied almost exclusively on its petition to present the clear and specific evidence necessary to establish a prima facie case and to avoid a TCPA dismissal. That scant effort was not enough, and the underlying claims should have been dismissed. We therefore must reverse and remand.

## II. Factual and Procedural Background

Our knowledge of the dispute's background comes mostly from the affidavits attached to the TCPA motions to dismiss filed by Appellants RRK Real Estate Investments & Holdings, LLC and Richard Rogers. The controversy has its genesis in a failed effort to finance a real estate project. RRK, acting through its manager and CEO, Rogers, worked with a broker to obtain financing for the project. That broker

2

introduced Rogers to an intermediary that allegedly was going to obtain millions of dollars in financing from Soleil Capitale, a party that shares the initial name as Appellee and the plaintiff below, Soleil Chartered Bank. The financing required the monetization of a standby letter of credit. The broker instructed RRK to send $30,000 to "Soleil Bank," and RRK did so in accordance with the information contained in correspondence from the intermediary.

RRK claims that the intermediary said that the money was sent too early but assured RRK that the deal could still be done. According to RRK, months passed, and RRK began asking questions. The intermediary laid the blame on Soleil, claiming that it had not produced the "right instrument" and that the intermediary had begun efforts to obtain return of the $30,000 payment.

Next, the intermediary allegedly wanted "to wash [its] hands of the situation" and gave Rogers the contact information for Soleil. Rogers claims that he received shifting excuses from Soleil. Internet research performed by Rogers also produced a concern that Soleil "might not have ever had the ability to pull off this transaction." Allegedly, at that point, Soleil threatened to sue. Rogers claimed that his position was that he wanted the $30,000 back and that he told Soleil that if it could produce evidence that another party was at fault for the situation, he would look to that party. Soleil allegedly quit responding to Rogers, and the intermediary refused to be involved.

Rogers was as at a loss on how to obtain return of the $30,000 when a friend suggested posting about his plight on RipOffReport.com. The friend told Rogers that reporting matters on the website got matters resolved quickly. According to the friend, RipOffReport.com allows parties to air their grievances and gives the "accused company" a chance to demonstrate that it handles disputes well. Rogers claimed that he posted "the story as it was presented to [him and RRK] and simply recounted [his and RRK's] experience with both [the intermediary] and Soleil." The posting did not produce a congenial resolution. The intermediary allegedly produced evidence placing the blame on Soleil. Soleil responded with another threat of suit.

Rogers claimed that he again sought either (1) evidence that the intermediary was at fault or (2) the return of the $30,000 from Soleil, and that if either occurred, he would post the positive outcome on RipOffReport.com. Allegedly, this produced a threat that if a positive report were not forthcoming, Soleil would sue.

Rogers claimed that he found "other reports of people saying that Soleil Chartered Bank had also taken their money or didn't provide a Bank Guarantee or [Standby] Letter of Credit that could actually be utilized." Also, Rogers claimed that he responded "to the man that contacted me[] and simply stated that if we could get the $30,000 USD back from Soleil Chartered Bank, we would be more than happy to post something positive, but RipOffReport.com wouldn't allow anyone to remove reports." The pre-suit episode ended with Rogers claiming that he heard nothing else from Soleil until notice of a lawsuit was taped to his front door.

Soleil sued Rogers and RRK.  The core of the petition was that Rogers and RRK had made several posts on RipOffReport.com "containing several false statements."  The petition then quoted three of the posts but did not specify which statements within the posts were false.  The only other statement about the falsity of the statements concluded that "[m]any of the allegations contained in these publications are false."  Based on these "allegations," the petition asserted causes of action for defamation, business disparagement, and tortious interference with prospective advantage.  The two pages of the petition asserting the specific causes of action were conclusory allegations of the elements of the various causes of action.

Rogers responded to the suit with a special appearance and an answer.  We do not find an answer on behalf of RRK in the clerk's record, but Rogers and RRK each filed an "Anti-SLAPP Motion to Dismiss."  Those motions contain identical grounds: "The pleadings on file and the supporting affidavit(s) show by a preponderance of the evidence that Plaintiff's causes of action [for] *slander, libel, defamation of character, intentional infliction of emotional distress, interfering with economic benefit[,] and fraud[] are based [on] Defendant's exercise of First Amendment . . . right of free speech . . . .*"  [Emphasis added.]  The causes of action referenced in the motions to dismiss do not align with the causes of action alleged in the petition.  The affidavits from which we extracted our factual summary were attached to the motions to dismiss.

Soleil filed briefs in response to Rogers's and RRK's motions to dismiss.  Soleil's briefs made legal arguments challenging Rogers's and RRK's reliance on the

5

TCPA. But the only evidence that Soleil attached to its brief responding to RRK's motion was a copy of its petition, and the only evidence it attached to its brief responding to Rogers's motion was a copy of the petition and an unauthenticated copy of Rogers's postings on the RipOffReport.com website.

The trial court denied Rogers's special appearance. The trial court also denied Rogers's and RRK's motions to dismiss. Rogers and RRK perfected an appeal from the denial of these motions arguing in a single issue that the trial court erred by denying their TCPA motions to dismiss.

### III. Standard of Review

Because we construe the language of the TCPA in this appeal, we apply a de novo standard of review. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017); *see also Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018) ("In TCPA appeals, we have decided whether communications are matters of public concern under a de novo standard of review, suggesting that the determination is one of law.").

### IV. Analysis

**A. We apply the structure and procedural process of the TCPA.**

In this memorandum opinion, we will not outline the history or the purpose of the TCPA but initially quote the concurring opinion from the Austin Court of Appeals that sets forth an overview of the TCPA and describes the procedural mechanisms created by the TCPA:

6

[t]he specific means by which the [*l*]egislature sought to accomplish the TCPA's stated purposes was to provide a new set of procedural mechanisms through which a litigant may require, by motion, a threshold testing of the merits of legal proceedings or filings that are deemed to implicate the expressive interests protected by the statute, with the remedies of expedited dismissal, cost-shifting, and sanctions for any found wanting.

*Serafine v. Blunt*, 466 S.W.3d 352, 369 (Tex. App.—Austin 2015, no pet.) (op. on reh'g) (Pemberton, J., concurring).[1]

The Act implements these procedural mechanisms with a three-tiered approach:

Once a motion to dismiss is filed, a burden-shifting mechanism goes into effect. *[In re] Lipsky*, 460 S.W.3d [579,] 586–87 [(Tex. 2015) (orig. proceeding)]. First, a defendant moving for dismissal has the burden to show by a preponderance of the evidence that the plaintiff filed a "legal action" that is "based on, relates to, or is in response to" the defendant's exercise of the right of free speech, the right to petition, or the right of association. Tex. Civ. Prac. & Rem. Code Ann. §§ 27.003(a), .005(b); *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018).

Second, if the defendant satisfies that burden, to avoid dismissal, a plaintiff must establish by clear and specific evidence a prima facie case for each essential element of its claim. Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). The requirement for "clear and specific evidence" means the plaintiff "must provide enough detail to show the factual basis for its claim." *Lipsky*, 460 S.W.3d at 590–91.

---

[1]On September 1, 2019, substantial revisions to the TCPA became effective. *See* Act of May 17, 2019, 86th Leg., R.S., H.B. 2730, §§ 1–9, 12 (to be codified at Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001, .003, .005–.007, .0075, .009–.010). These amendments are irrelevant here because they apply "only to an action filed on or after the effective date of this Act. An action filed before the effective date of this Act is governed by the law in effect immediately before that date, and that law is continued in effect for that purpose." *See id.* § 11.

Third, even if the plaintiff establishes a prima facie case, the defendant can still obtain dismissal if he "establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d).[2]

*Beving v. Beadles*, 563 S.W.3d 399, 404 (Tex. App.—Fort Worth 2018, pet. denied).

As we explain below, we conclude that Soleil filed a legal action that related to the right of free speech as that right is defined by the TCPA; thus, the Act applies. We further conclude that Soleil failed to establish a prima facie case for each essential element of the causes of action that it alleged. Thus, the third step involving proof of an affirmative defense does not come into play.

## B. The TCPA applies to Soleil's action.

Checking off the definitional boxes of the TCPA, Soleil's action is in response to Appellants' exercise of their rights of free speech because Soleil's suit involved statements made in connection with a matter of public concern, i.e., an issue related to a service in the marketplace.

### 1. We apply the broad language of the TCPA in accordance with its plain meaning.

We interpret the definitions of the TCPA "according to their plain language" while remaining mindful that that the Act is to be construed "liberally to effectuate its purpose and intent fully." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015)

---

[2]The quoted language is set forth in a single paragraph. We have divided the quoted language into multiple paragraphs for ease of reading.

(quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.011); *see Coleman*, 512 S.W.3d at 899 (reiterating *Lippincott'*s plain-language directive).

A party may file a motion to dismiss under the TCPA when faced with "a legal action [that] is based on or is in response to a party's exercise of the right of free speech." Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a). To determine whether the action is based on the exercise of the right of free speech, we follow a building-block process of applying the Act's definitions. Specifically, with respect to the right of free speech, the supreme court has described that process as follows:

- [T]he defendant, who has moved to dismiss, must show by a preponderance of the evidence that the plaintiff's claim "is based on, relates to, or is in response to the [movant's] exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association." Tex. Civ. Prac. & Rem. Code [Ann.] § 27.005(b); *In re Lipsky*, 460 S.W.3d at 586 (alteration in original) (footnotes omitted).

- The TCPA defines "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code [Ann.] § 27.001(3).

- A "'[c]ommunication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1).

- Finally, a "'[m]atter of public concern' includes an issue related to: (A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." *Id.* § 27.001(7).[3]

---

[3]The quoted language is not bulleted in *Coleman*. We use bullets for ease of reading.

9

*Coleman*, 512 S.W.3d at 898–99.

A movant may rely on the pleadings and affidavits to establish the Act's application. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a) ("In determining whether a legal action . . . should be dismissed under this chapter, the court shall consider the pleadings . . . and supporting and opposing affidavits stating the facts on which the liability or defense is based."). When dealing with the first step of whether the TCPA applies, the pleadings often answer the question posed in that step because "[w]hen it is clear from the plaintiff's pleadings that the action is covered by the Act, the defendant need show no more." *Adams*, 547 S.W.3d at 897 (quoting *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017)).

### 2. Soleil's pleadings demonstrate that the TCPA applies in this suit.

The underlying facts are not complicated. They fall within the wide net of the TCPA because they implicate the right of free speech as defined by the TCPA in that they involve a communication that relates to a service in the marketplace. Rogers and RRK sought a banking service from Soleil. They believed that Soleil had failed to perform that service and had then misrepresented what had occurred. Allegedly, Rogers and RRK posted on RipOffReport.com both to obtain a resolution of the issue and to warn others of Soleil's actions in this case and the concern that Soleil might not have the ability to provide anyone with the services that it allegedly was to provide RRK. Then, when Rogers and RRK sought to resolve the dispute and to obtain the return of the $30,000 payment, they were threatened with suit and were

10

eventually sued. Though not containing the negative information set out in Rogers's and RRK's affidavits, Soleil's petition bears out that it offered financial services, that Rogers and RRK criticized those services, and that they did so in a public forum.

These facts are caught in the wide net cast by the TCPA. *See id.* at 894 ("The TCPA casts a wide net."). The face of Soleil's pleadings—in this case reinforced by Rogers's and RRK's affidavits—show the alleged defamatory communications made by Rogers and RRK raised "issues related to" Soleil's products or services in the marketplace as an offeror of financial services. *See id.* (holding that the TCPA applied because "[t]he alleged defamatory communications made by Adams raise[d] 'issues related to' Starside's products or services in the marketplace as a homebuilder and neighborhood developer"); *Coleman*, 512 S.W.3d at 900 (noting that "[t]he TCPA does not require that the statements specifically 'mention' health, safety, environmental, or economic concerns, nor does it require more than a 'tangential relationship' to the same"; instead "TCPA applicability requires only that the defendant's statements are 'in connection with' 'issue[s] related to' health, safety, environmental, economic, and other identified matters of public concern chosen by the [*l*]egislature" (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3), (7))).

The Austin Court of Appeals recently looked to the broad definitions of the TCPA and held that they applied to a report posted on RipOffReport.com. *Morrison v. Profanchik*, 578 S.W.3d 676, 678 (Tex. App.—Austin 2019, no pet. h.). *Morrison* dealt with an allegedly fake negative review posted by a business's competitor. *Id.* at 678–

11

79. The explanation of why the Act applied to the claims in *Morrison* is a template for why the Act applies in this case:

> Here, [plaintiff's] petition makes it clear that his defamation claim is based on or in response to the ripoffreport.com review that he attributes to [defendants]: "Defendants published and/or have caused to be imminently published false and defamatory statements of fact about Plaintiff, as set forth in the ripoffreport.com fake review." Further, [plaintiff's] petition asserts that the ripoffreport.com review is a "fake consumer review" that complains about services provided by Profanchik Sr.'s business. Thus, by relying on [plaintiff's] pleadings, [defendants] showed that [plaintiff's] defamation claim is based on [defendants'] exercise of free speech—i.e., its alleged posting of the ripoffreport.com review of the services offered by Profanchik Sr.'s business—and thus covered by the Act.

*Id.* at 681–82.

Here, Soleil describes itself as "in the business of financial services for clients around the world." Soleil describes Rogers and RRK's actions as publishing "false statements about [Soleil]'s business." Soleil's petition references several instances in which Rogers and RRK "published the following on RipOffReport.com containing several false statements." The petition describes the purpose of the statements as "accus[ing Soleil] of committing crimes and unlawful conduct with respect to [Soleil's] business" and "of immoral behavior." Soleil has pleaded itself into the TCPA's application: its petition references communications that involve the exercise of free speech because they are made with respect to a matter of public concern—an issue related to a service in the marketplace.

### 3. Soleil's argument that Rogers and RRK did not preserve error fails.

Soleil's appellate brief makes no substantive argument challenging the application of the TCPA. Instead, it challenges the form of Rogers's and RRK's motions to dismiss, claiming that the motions presented only one sentence of argument that the TCPA applied to Soleil's suit and that Rogers and RRK did not fully develop that argument until filing a reply to Soleil's response. We are unpersuaded.

Initially, Soleil does not tell us why the motions were deficient. Both motions contain similar grounds. Though not elaborate, the allegations make the basic point of which TCPA right Rogers and RRK are invoking and why they contend that right protects them:

> The pleadings on file and the supporting affidavit(s) show by a preponderance of the evidence that Plaintiff's causes of action [for] slander, libel, defamation of character, intentional infliction of emotional distress, interfering with economic benefit[,] and fraud[] *are based [on] Defendant's exercise of his First Amendment . . . right of free speech as defined in Texas Civil Practice and Remedies Code § 27.001* and demonstrate that Plaintiff has failed to establish by clear and specific evidence a prima facie case for each essential element of Plaintiff's claim(s). *Richard Rogers has exercised his First [A]mendment rights to speak out against a good, product, or service in the marketplace[,] which is a matter of public concern under Tex. Civ. Prac. & Rem. Code [Ann.] § 27.001(7)(E)*[.] [Emphasis added.]

Though not artful in their description of Soleil's claims, Rogers and RRK's grounds communicate the basic premise of a motion to dismiss: the TCPA applies because Rogers and RRK were exercising a TCPA-defined right of free speech.

13

Nor does Soleil cite any case suggesting that the motions' grounds are deficient. In fact, Soleil cites only two federal cases for the irrelevant proposition that arguments raised for the first time in a reply are untimely:

> *Gillaspy v. Dallas Ind. Sch. Dist.*, 278 [F. App'x] 307, 315 (5th Cir. 2008) ("It is the practice of this court and the district courts to refuse to consider arguments raised for the first time in reply briefs[.]"); *Springs Indus. Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 240 (N.D. Tex. 1991).

Soleil's failure to cite cases that support its position is understandable as the caselaw is contrary to its argument. First, the supreme court has warned the courts of appeals not to be "too strict" in their application of error-preservation principles in TCPA cases. *See Adams*, 547 S.W.3d at 896–97. In *Adams*, a party's mentioning the nature of the public concern at a TCPA-motion-to-dismiss hearing preserved error. *Id.* The supreme court buttressed this holding with the concept that we have already mentioned: "the unique language of the TCPA directs courts to decide its applicability based on a holistic review of the pleadings." *Id.* at 897. *Adams* instructs that while conducting a de novo review, it is our role to decide, as a matter of law, whether the petition is based on or related to a matter of public concern and not to become mired in a microscopic analysis of error preservation:

> We have not previously cabined our TCPA analysis to the precise legal arguments or record references a moving party made to the trial court regarding the TCPA's applicability. Our focus instead has been on the pleadings and on whether, as a matter of law, they are based on or relate to a matter of public concern.

14

*Id.*; *see also Morrison*, 578 S.W.3d at 681 (holding that motion to dismiss—which stated conclusory allegation that suit involved a matter of public concern because its statements concerned goods, products, or services in the marketplace—preserved error because "to determine the basis of a legal action for purposes of the first step in the dismissal procedure, it is necessary to consider the plaintiff's petition, which is 'the "best and all-sufficient evidence of the nature of the action"'" (quoting *Hersh*, 526 S.W.3d at 467)).  The grounds recited in Rogers's and RRK's motions to dismiss are not elaborate, but they certainly raise an issue that is our responsibility to determine as a matter of law:  does the TCPA apply to the allegations in Soleil's petition?

**C.  Soleil relied on its petition as its sole proof to establish a prima facie case for defamation.  The petition's allegations never identified the specific statements that it contends were defamatory.  Thus, Soleil failed to offer the clear and specific evidence necessary to establish a prima facie case of defamation.**

Suffering from the combined strategic disadvantages of the wide net of the TCPA and the relatively low preponderance burden to show the Act's application, a party facing a motion to dismiss often loses the first battle in the TCPA dismissal war.  But the nonmovant can often rally from that initial setback and prevail in the second battle of the war by offering the clear and specific evidence necessary to establish a prima facie case for each element of its claims.  Here, Soleil marshalled minimal resources for the second battle and offered only its petition to satisfy its burden to establish prima facie proof.  The TCPA allows a nonmovant to rely on its pleading to establish a prima facie case, but a party's choosing to rely only on its pleading gambles

15

that the often-times conclusory and sketchy allegations of a notice pleading will not satisfy the clear and specific burden of establishing a prima facie case. Soleil took that gamble, and we hold that Soleil's gamble did not pay off. As we explain below, Soleil's pleading lacks the specificity necessary to establish what false statements were allegedly made by Rogers and by RRK.[4]

As set forth above, the second step of the TCPA dismissal process requires a plaintiff to establish by clear and specific evidence a prima facie case for each essential element of its claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). The TCPA creates a unique situation in which a party's pleadings are considered as evidence that the trial court must rely on in determining whether to dismiss a legal action. *See id.* § 27.006(a) ("In determining whether a legal action should be dismissed[,] . . . the court shall consider the pleadings . . . and supporting and opposing affidavits stating the facts on which the liability or defense is based."); *see also Bass v. United Dev. Funding, L.P.*, No. 05-18-00752-CV, 2019 WL 3940976, at *17 n.20 (Tex. App.—Dallas Aug. 21, 2019, no pet. h.) (mem. op.) (collecting cases standing for the proposition that pleadings are evidence for purposes of the TCPA).[5]

---

[4]Soleil also attached a printout of postings on RipOffReport.com. This evidence is not authenticated in any way nor does any affidavit tell us what we should glean from it. We therefore do not consider the printout in our analysis.

[5]Many of the cases listed in *Bass* state that the evidence must be viewed in the light most favorable to the nonmovant. Though it is not pivotal to our disposition, a member of this panel recently expressed concern that such a standard imports language into the TCPA not found in the version of the Act that we apply. *See Mogged*

16

Though a pleading functions as evidence under the TCPA, that does not mean that a pleading that is sufficient to provide an opposing party with fair notice of the claim being made automatically makes that pleading sufficient to meet the clear and specific standard necessary to establish a prima facie case under the TCPA. The supreme court dealt specifically with this distinction in the context of a TCPA motion to dismiss filed in a defamation case:

> Fair notice of a claim under our procedural rules thus may require something less than "clear and specific evidence" of each essential element of the claim. Because the Act requires more, mere notice pleading—that is, general allegations that merely recite the elements of a cause of action—will not suffice. Instead, a plaintiff must provide enough detail to show the factual basis for its claim. *In a defamation case that implicates the TCPA, pleadings and evidence that establishes the facts of when, where, and what was said[;] the defamatory nature of the statements[;] and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss.*

*Lipsky*, 460 S.W.3d at 590–91 (emphasis added).

Thus, we must ask whether Soleil's petition provides enough detail to show the factual basis of its defamation claim. As we noted above, Soleil's petition quotes several of the posts that Roger made on RipOffReport.com and prefaces the quotations with the statement that the posts contain several false statements. The first quote contains five paragraphs and 525 words. In essence, the petition states that

*v. Lindamood*, No. 02-18-00126-CV, 2018 WL 6920502, at *12–14 (Tex. App.—Fort Worth Dec. 31, 2018, pet. abated) (mem. op.) (Kerr, J., dissenting and concurring) (calling into doubt the applicability of rule 166a standards to resolve a TCPA motion to dismiss under the then-existing version of the Act) (en banc reconsideration ordered on this court's own motion).

Rogers and RRK allegedly made false statements and that those statements were contained somewhere in the posts on RipOffReport.com, but the petition does not identify which statements are false. This failing renders the petition so conclusory that, standing on its own, it does not provide the clear and specific evidence necessary to avoid dismissal.[6]

Such an allegation does not appear to even satisfy the rules of fair-notice pleading. When a party predicates a defamation claim on a writing, traditional Texas pleading rules require the party to be specific about what statement was false, and the failure to do so makes the petition's allegation of defamation conclusory:

> In an action for libel, "the petition must set out the particular defamatory words[] or at least their substance and meaning." *Murray v. Harris*, 112 S.W.2d 1091, 1094 (Tex. Civ. App.—Amarillo 1938, writ dism'd); *Rio Grande Valley Gas Co. v. Caskey*, 33 S.W.2d 848, 849–50 (Tex. Civ. App.—San Antonio 1930, no writ). Nowhere in Kahn's petition does he inform the court of the libelous matter nor does he set out the parts of the writing upon which the alleged libel is based. *Rio Grande Valley Gas Co.*, 33 S.W.2d at 849. In short, we are left only with Kahn's opinions and conclusions as to the libelous matter.

*Kahn v. Beicker Eng'g, Inc.*, No. 04-94-00823-CV, 1995 WL 612402, at *2 (Tex. App.—San Antonio Oct. 18, 1995, writ denied) (not designated for publication); *cf. Davis v. Prosperity Bank*, 383 S.W.3d 795, 804 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (affirming no-evidence summary judgment on defamation claim because of plaintiff's

---

[6]We attach a copy of the petition as an appendix to this opinion.

18

failure to identify specific defamatory statements in a police report relating to an arrest at a bank).

If a pleading must describe the defamatory statements to be sufficient under the notice-pleading standard, we do not see how a pleading that fails to do so provides the clear and specific prima facie evidence needed to establish Soleil's prima facie case for defamation. By taking the approach of quoting swaths of Rogers and RRK's posts and stating that the posts contain false statements but never specifying which statements in the quotes are false, Soleil failed to carry that burden. Certainly, the petition goes beyond a mere statement that defamatory statements were made while not quoting any of the alleged defamers' words. But in significant ways, Soleil's petition is the functional equivalent of such an allegation because it never identifies which statements are allegedly false.

Thus, we cannot determine whether the statements that Soleil contends are false are of only picayune significance or constitute defamatory statements because they "tend[] to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation." *See* Tex. Civ. Prac. & Rem. Code Ann. § 73.001. And without that information, Soleil cannot carry its burden of establishing a prima facie case by clear and specific evidence that Rogers and RRK committed defamation. As the supreme court held in *Lipsky*, "[T]he facts of when, where, and what was said[;] the defamatory nature of the statements[;] and how they damaged the

19

plaintiff should be sufficient to resist a TCPA motion to dismiss." 460 S.W.3d at 590–91. Because of the structure of Soleil's petition, we lack knowledge of "what was said" and "the defamatory nature of the statements." Accordingly, we hold that the trial court erred by not dismissing Soleil's defamation claim.

**D. Soleil's business-disparagement claim should have been dismissed because Soleil failed to offer clear and specific evidence that established a prima facie case on that claim's damage element.**

We hold that the trial court should have also dismissed Soleil's business-disparagement claim but on different grounds than Soleil's defamation claim. The record does not contain even a superficial effort to establish that Soleil suffered damages as a result of the Rogers and RRK's alleged disparagement. This failure means that Soleil has failed to establish a prima facie case on each element of its business-disparagement claim. Thus, the business-disparagement claim should also have been dismissed.

"To prevail on a business[-]disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003) (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987)). Though similar to a defamation claim, there are critical differences between defamation and disparagement. *Hurlbut*, 749 S.W.2d at 766. The critical difference that applies here is that "the common law require[s] [a] plaintiff in a defamation action to prove special

20

damages in only a limited number of situations, whereas pecuniary loss to the plaintiff must always be proved to establish a cause of action for business disparagement." *Id.*

To establish damages for disparagement, a plaintiff must meet a stringent burden. First, the "plaintiff [must] 'establish pecuniary loss that has been realized or liquidated as in the case of specific lost sales.'" *Id.* at 767 (quoting W. Keeton, *Prosser and Keeton on the law of Torts*, § 128 (5th ed. 1984)). "Furthermore, the communication must play a substantial part in inducing others not to deal with the plaintiff with the result that special damage, in the form of the loss of trade or other dealings, is established." *Id.*

Soleil made no effort to meet this burden. Soleil's petition alleges its business-disparagement claim in five paragraphs, each containing a single short sentence. The extent of Soleil's allegation of damages is that Appellants' "actions resulted in damages, including special damages[,] in the amount to be determined at trial[] but in no event less than $200,000.00." The claim section does incorporate the petition's factual allegations, but that section of the petition says nothing about damages. Soleil did not file an affidavit to carry its burden to establish a prima facie case.

Cases applying that burden in the context of a TCPA motion to dismiss show how lacking Soleil's effort was. This court recently cited the supreme court's directive that a general averment of damages does not satisfy a TCPA nonmovant's burden to establish that it suffered damage. *See Van Der Linden v. Khan*, 535 S.W.3d 179, 197 (Tex. App.—Fort Worth 2017, pet. denied) ("The supreme court has instructed us

21

that 'general averments of direct economic losses and lost profits'—even when a dollar amount is specified—do not satisfy the minimum requirements of the TCPA." (quoting *Lipsky*, 460 S.W.3d at 593)). In *Van Der Linden*, the nonmovant offered affidavit proof of its damages, but that affidavit failed to carry its burden because it did not include any facts showing how its damages were calculated. *Id.* at 197; *see S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018) ("Direct evidence of damages is not required, but the evidence must be sufficient to allow a rational inference that some damages naturally flowed from the defendant's conduct." (citing *Lipsky*, 460 S.W.3d at 591, 592)).

The conclusory allegation in Soleil's petition is a general averment of damages that utterly fails to constitute the clear and specific evidence necessary to carry its burden to establish a prima facie case on the damages element of its business-disparagement claim. Accordingly, we hold that the trial court erred by not dismissing Soleil's business-disparagement claim.

**E. Soleil's tortious-interference claim should have been dismissed because Soleil failed to offer clear and specific evidence that established a prima facie case on that claim's damage element.**

Soleil's proof of damages supporting its claim for "tortious interference with prospective contracts" suffers from the same fatal deficiency as its business-disparagement claim. Soleil titles its third claim for relief as "Tortious Interference with Prospective Advantage." But in the specific allegations, Soleil describes its claim as "tortious interference with prospective contracts." We construe the claim to be

22

one for tortious interference with prospective business relations. Soleil failed to provide prima facie proof of the claim, and it should have been dismissed as well.

To prevail on a claim for tortious interference with prospective business relations, a plaintiff must show the following:

> (1) a reasonable probability that the plaintiff and a third party would have entered into a contractual relationship; (2) that an independently tortious or wrongful act by the defendant prevented the relationship from occurring; (3) that the defendant did the act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of the conduct; and (4) that the plaintiff incurred actual harm or damage as a result of the defendant's interference.

*Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 632–33 (Tex. App.—Fort Worth 2007, pet. denied) (op. on reh'g) (citations omitted), *abrogated on other grounds by Dallas Symphony Ass'n, Inc. v. Reyes*, 571 S.W.3d 753, 760 (Tex. 2019).

Our opinion in *Van Der Linden*, which was described above, specifically dealt with a tortious-interference-with-prospective-business-relations claim and applied to that claim the principle just outlined: general averments of damages will not carry a TCPA nonmovant's burden of proof to establish a prima facie case. 535 S.W.3d at 197. Here, Soleil put no more effort into its proof damages for its tortious-interference claim than it did for its disparagement claim.

Soleil's tortious-interference claim is alleged in a brief series of one-sentence paragraphs. The full extent of the damage allegation is that "[s]uch false and defamatory statements ha[ve] proximately caused actual damages to Plaintiff in the

23

amount to be determined at trial[] but in no event less than $200,000.00." As noted, damages are not even mentioned in the underlying factual allegations of the petition. The petition's conclusory damages allegation does not come close to what Soleil needed to offer to establish a prima facie case on the element of damages for tortious interference with prospective business relations. Thus, we hold that the trial court erred by not dismissing Soleil's tortious-interference claim.

## F.  Disposition of Sole Issue on Appeal

Having determined that the trial court erred by failing to dismiss Soleil's claims for defamation, business disparagement, and tortious interference, we hold that the trial court erred by denying Rogers's and RRK's motions to dismiss and sustain their sole issue.

## V.  Conclusion

Having sustained Rogers and RRK's sole issue after determining that they were entitled to dismissal under the TCPA, we reverse the trial court's denial of Rogers's and RRK's motions to dismiss and remand this case to the trial court for further proceedings consistent with this opinion. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.009.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered:  September 26, 2019

24

Appendix

FILED
TARRANT COUNTY
9/24/2018 7:08 PM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. 048-303257-18

| | | |
|---|---|---|
| SOLEIL CHARTERED BANK, | § § § § | IN THE JUDICIAL DISTRICT |
| Plaintiff, | § § § | TARRANT COUNTY, TEXAS |
| v. | § § | |
| RRK REAL ESTATE INVESTMENTS & HOLDINGS, LLC; RICHARD ROGERS, | § § § § | |
| Defendants. | § § | _____ DISTRICT COURT |

---

## PLAINTIFF'S ORIGINAL PETITION

---

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Plaintiff, and file this Original Petition against Defendants, in support of which we would respectfully show the Court the following:

## PARTIES

1.    Plaintiff SOLEIL CHARTERED BANK (hereinafter "SCB") is a Union of Comoros entity with trade correspondence offices in New York and Romania.

2.    Defendant RRK REAL ESTATE INVESTMENTS & HOLDINGS, LLC (hereinafter "Defendant RRK") is a Nevada limited liability company doing business in the State of Texas, which may be served through its registered agent URS Agents, LLC, 3610-2 North Josey Lane, Suite 223, Carrollton, Texas, 75507.

3.    Defendant RICHARD ROGERS (hereafter "Defendant Rogers") is an individual who may be served at 8760 Stonebriar Lane, Forth Worth, Texas 76123.

5

## VENUE

4. Venue is proper in Tarrant County, Texas as the county in which RRK REAL ESTATE INVESTMENTS & HOLDINGS, LLC has its principal office as well as the county in which part of the events made the basis of this lawsuit occurred.

## DISCOVERY CONTROL PLAN

5. The parties will conduct discovery in this action under the Discovery Control Plan Level Three as set forth in the Tex.R.Civ.Pro. 190.1.

6. Plaintiff sues Defendant RRK and Defendant Rogers (hereinafter collectively "Defendants") for, *inter alia*, defamation and related claims under Texas Law and brings this action for damages and relief under the provisions of Chapter 73 of the Tex. Civ. Prac. & Rem. Code. Demand is hereby made of each Defendant for correction/retraction of the statements set forth below, to be published in the same manner and medium as the original publications and to include and acknowledgement that the original publications were false and erroneous. Otherwise Plaintiff, sues for general and specific damages in an amount in excess of the minimum jurisdictional limits of this Court.

## DEFEMATION AND DISPARAGEMENT

7. SCB has suffered irreparable injury because Defendant published false statements about SCB's business.

8. On or about October 30, 2017, Defendants published the following on RipoffReport.com containing several false statements:

> I created a contract with ITL Global Capital to fund a Real Estate Development Project for $2,000,000. I was introduced to this company through Hallel Capital, who served as the mediator between ITL and Myself, and was handling all

6

26

communication. We signed an agreement where they promised to fund the deal and they would be able to return the $30,000 required to start the process, and purchase the bank guarantee. We were going to use Soleil Chartered Bank as the Bank Guarantor to facilitate the funding. The mediator (Hallel Capital) told me it was time to send in the $30,000, which I did since they were in direct communication with ITL Global Capital.

Several weeks go by and no funding is received, and it was several weeks past the day ITL promised the funding. They then said I sent the money to Soleil Bank to soon, and no agreement for the bank guarantee was created. However, Soleil Chartered Bank refused to return the $30,000 because they already created the Bank Guarantee, but wouldnt give the guarantee to ITL. So, the money was in limbo and they wouldn't give it back.

ITL agrees that they will cover the $30,000 and proceed with the funding, and promised they could get it done within 30 days. ITL then proceeds to drag me along for 3 months, and continue to miss the new deadlines they promise for funding. Eventually, they tell me that the funding is on the way, but they sent the wire through the Bank of China, which they don't have any bank affiliation with. This extends the process by 30 days, and I still dont receive the funding. ITL then recalls the funding so they can send it from their Lawyer's Trust account, which they admit they should've done in the first place. That also takes 30 days.

Eventually, the 30 days they said it would take to get the money in there account is up, and they say they will wire it over. A week goes by with no money being sent. They then admit that the guarantee they used was no good, and that they couldn't get the funding. They then broke the agreement and said they would not fund the deal at all. They promised they would give me the intial $30,000 I gave to start the whole process, and that it woiuld be wired within a week. This process has dragged out for 6 weeks and the $30,000 has still not been returned.

ITL is now saying it isn't their responsibility to fund the 2 million or return the $30,000 and that the fault lays with myself and Soleil Chartered Bank. As far as I'm concerned both entities are at fault together. Soleil for keeping the $30,000 and not providing the promised instrument, and ITL for breaching the written agreement and not producing the $2,000,000 and being misleading about being able to fund it when they weren't able to, then promising to return the $30,000 for 6 weeks and deciding not to do so. I simply want the $30,000 returned, so that I can proceed to utilize other sources for funding.

9.    Thereafter, on or about November 10, 2017, Defendants published the following on RipoffReport.com the containing several false statements:

Soleil has provided no proof that they provided the guarantee required. They did not complete their obligation according to ITL. They were most certainly privy to the contract with ITL and the fact that my 30k wasn't returned along with the 2M funding is evidence they didn't complete their part of the transaction. Be careful using this Bank!

7

10.    Subsequently, on or about November 11, 2017, Defendants published the following on RipoffReport.com containing several false statements:

> I requested for Soleil to provide documentation to prove that they completed their obligation. All they sent me was a random wire to a German Company. I told them that this didn't prove that this was related to me or ITL, and asked them to provide any additional information to help. They ignored me for about two days and wouldn't provide any documentation. I called to tell them that I just wanted to resolve this and get my money back. I showed them a website that raised some concerns. The website said they were banned from provided SBLC assets, which would mean they couldn't provide the service they claim. Instead of talking with me and helping me with documentation to prove those claims false. The a man name Govind went off on me and threatened to sue me. Innocent people wouldn't do that in my opinion. They would simply provide evidence of their innocence. BE CAREFUL USING THEM!

11.    All of the above were "published" by being uploaded on the aforementioned website. In addition, the language of these is readily understood, the statements contained therein are capable of being objectively characterized as true or false, and the statements in the emails are being set forth by the Defendants as facts.

12.    Plaintiff is in the business of financial services for clients around the world. Plaintiff was in this business at the time the above statements were published. The language of these statements accuses the Plaintiff of committing crimes and unlawful conduct with respect to this business. In addition, the statements also accuse Plaintiff of immoral behavior.

13.    Many of the allegations contained in these publications are false and the obvious intent of these emails is to injure or prejudice the reputation of the Plaintiff's business and constitutes liable per se.

14.    Plaintiff discovered the above statements by Defendants.

15.    On or about August 13, 2018, Plaintiff caused to be served a cease and desist demand notice demanding that the above defamatory and false postings be taken

8

28

down.

16.     Defendants replied shortly thereafter indicating that the defamatory and posts would not be taken down.

17.     The above defamatory and false postings continue to be published and available to date.

18.     Each of these Defendants should be required to retract their falsehoods and broadcast the truth.

## FIRST CLAIM FOR RELIEF
### Defamation

19.     Plaintiff repeats and re-alleges the allegations contained in paragraphs "1" through "18" as if fully set forth herein.

20.     Defendants conduct, as described in this Petition, constitutes defamation.

21.     Defendants negligently or maliciously published false and defamatory statements of fact about Plaintiff, a private company.

22.     The Defendants' conduct constitutes defamation per se.

23.     The Plaintiff has suffered and continues to suffer damages to its business as a result in the amount to be determined at trial, but in no event less than $200,000.00.

## SECOND CLAIM FOR RELIEF
### Business Disparagement

24.     Plaintiff repeats and re-alleges the allegations contained in paragraphs "1" through "23" as if fully set forth herein.

25.     Defendants conduct, as described in this Petition, constitutes business

9

disparagement.

26. Defendants negligently or maliciously published false and defamatory statements of fact about the business of Plaintiff, a private company.

27. Defendants acted without privilege.

28. Defendants actions resulted in damages, including special damages in the amount to be determined at trial, but in no event less than $200,000.00.

### THIRD CLAIM FOR RELIEF
#### Tortious Interference with Prospective Advantage

29. Plaintiff repeats and re-alleges the allegations contained in paragraphs "1" through "28" as if fully set forth herein.

30. Defendants conduct, as described in this Petition, constitutes tortious interference with prospective contracts.

31. There was and is a reasonable probability that Plaintiff would enter into business with other customers of finance services.

32. Defendants above referenced statements constitute a wrongful, deliberate, willful, international or otherwise tortious interference with prospective contracts.

33. Defendants above referenced statements were done with a conscious desire to prevent contracts to be entered into with Plaintiff.

34. Such false and defamatory statements has proximately caused actual damages to Plaintiff in the amount to be determined at trial, but in no event less than $200,000.00.

### JURY DEMAND

35. Plaintiff demands a trial by Jury and tenders the required fee.

10

30

## PRAYER

Wherefore, Plaintiff prays that Defendants be cited to appear and answer herein, and that on final trial Plaintiff have judgment for the following relief:

1. General Damages;

2. Special Damages;

3. Exemplary Damages;

4. Prejudgment and post judgment interest at the rates provided by law;

5. Such other and further relief, both in law and equity to which Plaintiff may show itself justly entitled.

September 24, 2018

Respectfully Submitted,

/s/ Camisha L. Simmons
Simmons Legal PLLC
By: Camisha L. Simmons, Esq.
Texas Bar No. 24056328
3131 McKinney Ave., Suite 600
Dallas, Texas 75204
(214) 643-6192
Fax: 1 (800) 698-9913

PEYROT & ASSOCIATES, PC
David C. Van Leeuwen, *pro hac vice*
application forthcoming
Helene Carvallo, *pro hac vice*
application forthcoming
62 William Street, 8th Floor
New York, New York 10005
(646) 650-2785

*Attorneys for Plaintiff*

11