**Affirmed in Part, Reversed and Remanded in Part, and Opinion filed June 8, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00196-CV

---

### NORIS ROGERS, Appellant

### V.

### CITY OF HOUSTON; CENTERPOINT ENERGY HOUSTON ELECTRIC, LLC; AND DAVEY TREE SURGERY, Appellees

---

**On Appeal from the 240th District Court
Fort Bend County, Texas
Trial Court Cause No. 18-DCV-248131**

---

## O P I N I O N

Appellant Noris Rogers sued appellees the City of Houston, CenterPoint Energy Houston Electric, LLC, and Davey Tree Surgery for false imprisonment and intrusion on seclusion, among other claims, based on events that occurred when CenterPoint and Davey Tree employees, accompanied by a City of Houston police officer, came to Rogers' property to trim a tree under a powerline. The trial court granted traditional and no-evidence summary judgments favoring

CenterPoint and Davey Tree and a plea to the jurisdiction favoring the City. We affirm the trial court's grant of summary judgment favoring Davey Tree on all claims and favoring CenterPoint on the intrusion on seclusion claim. We also affirm the trial court's dismissal of all claims against the City. We reverse the grant of summary judgment favoring CenterPoint on Rogers' false imprisonment claim and remand that claim back to the trial court for further proceedings.

*Background*

Many of the facts in this case are undisputed. Rogers owns a home in Fort Bend County, Texas. CenterPoint, a public utility, claims a right of access to Rogers' backyard to trim an oak tree that is under a powerline. CenterPoint claims this right both under a tariff pursuant to which it provides electrical services and based on an aerial easement it has over Rogers' property for the powerline. CenterPoint contracted with Davey Tree to conduct the tree trimming. On November 7, 2017, a CenterPoint representative and a Davey Tree crew arrived at Rogers' home to trim the oak tree. They were accompanied by Houston Police Sergeant Pochen Lee, with whom CenterPoint had contracted to provide assistance. Lee was working an extra job with the approval of the Houston Police Department ("HPD") and was wearing his uniform and carrying a firearm. It is undisputed that Rogers' home is outside HPD's jurisdiction.

Davey Tree had previously left a door hanger at Rogers' home informing him of the impending tree trimming, and Davey Tree employees came to the residence twice in October 2017, but Rogers did not allow them to trim the tree. There was an allegation that Rogers had shoved one of the employees during a visit, which Rogers denied. At one point, Rogers called CenterPoint and then followed up with a letter in which he stated:

It was never my intent to prevent your subcontractor from [doing] its

2

work, I just wanted *(and still want)* input as to how the tree was to be trimmed . . . . [A]s we discussed over the telephone, CenterPoint [has] my permission to trim the Oak Tree in my back yard . . . <u>on the condition that I will have input as to how the tree will be cut back</u>.

(Emphasis in original). CenterPoint apparently did not respond to this letter.

The tariff and aerial easement under which CenterPoint claims the right to enter Rogers' property were offered as summary judgment evidence. The tariff provides in relevant part that CenterPoint's

> duly authorized representatives have the right of access to Retail Customer's Premises at all reasonable hours . . . to: . . . perform . . . activities necessary to provide Delivery Service, including tree trimming and tree removal where such trees in the opinion of Company constitute a hazard to Company personnel or facilities, or to the provision of continuous Delivery Service . . . .

The easement states that the grantee has

> rights of ingress and egress to and from said easement, . . . together with the additional right to remove from said easement and land adjoining thereto, all bushes, trees and parts thereof . . . which, in the opinion of Grantee, endanger or may interfere with the efficiency, safe and proper operation, and maintenance of said electric distribution facilities.

A video recording of the events of November 7, taken from Lee's body camera, was also made part of the summary judgment evidence. Because the claims and issues in this lawsuit all revolve around the events in question, we will describe the video in some detail. When the video begins, Sergeant Lee exits his vehicle and walks up Rogers' driveway to where Rogers is standing in his garage. The two exchange greetings, and Lee tells Rogers that he is there with CenterPoint and a tree company. Lee also states that CenterPoint told Lee that Rogers had been informed they were coming. Rogers says they earlier left a voicemail but he told them to call back before they came to his home.

3

CenterPoint representative David Menough then walks up the driveway and introduces himself to Rogers. Menough says that he had tried to call Rogers but the call again went to voicemail. Rogers denies this. Rogers then says that he objects to CenterPoint coming to his home with an armed police officer. He tells Lee that he (Rogers) has committed no crime and threatened no one and that CenterPoint is using Lee to intimidate him. Lee responds that he is there to keep everyone safe including Rogers.

Rogers then explains that he agreed CenterPoint could cut the tree, that he had called them four times, but CenterPoint did not return the phone calls. Rogers also complains that CenterPoint did not give him the option of having the tree trimmed himself. Menough asserts that it is against the law to allow anybody except the power company to trim within six feet of a power line due to safety concerns. Rogers denies that the tree is within six feet of the power line. Menough shows a flyer to Lee and Rogers, purportedly regarding the law in question.

At this point, Menough becomes loud and aggressive and moves quickly towards Rogers with his hand raised in a gesture. Rogers turns to Lee and says, "He is threatening me." Menough walks away and appears to order the Davey Tree work crew that is standing nearby to head to the easement in Rogers' backyard. Some of the workers begin to move toward the gate at the side of Rogers' house. Rogers tells them to get off his property and walks toward the gate. Menough tells Sergeant Lee, "I want you to arrest him and put him in your car. He is stopping our progress. We have the right to do this." Rogers meanwhile closes the gate to his backyard and places a padlock on it while asking Lee repeatedly to "please leave, officer."

Lee tells Rogers that he is going to have to call an on-duty Fort Bend County unit, and if they find out Rogers is in violation of any law, he will be arrested.

Rogers points toward Menough and tells Lee that "this man just physically threatened me," and "if he stands in my face again, I am going to protect myself." Rogers then points at someone in the Davey Tree crew and says that last time the man came to Rogers' property, he threatened Rogers. Menough offers that it was Rogers who threatened a crew member on the prior visit. Rogers then calls Menough "a liar."

Menough heads to his truck and retrieves a pair of bolt cutters, which Rogers later described as a weapon, and Rogers goes to his garage and picks up a baseball bat. Lee follows Rogers into the garage and takes the bat from his hands. Rogers relinquishes the bat easily as soon as Lee touches it. Menough meanwhile gives the bolt cutters to Davey Tree manager Jose Rodriguez, who heads toward the gate at the side of Rogers' home. Rogers moves in front of Rodriguez, and the two make slight contact. Lee then tells Rogers, "You already broke the law," and encourages him to come sit down. Rodriguez and Menough again move toward the gate, but Rogers gets there first and stands with his back to the gate, pointing out that he has a no trespassing sign posted on the fence and telling them to get off his property and that he just wants peace. Menough tells Rogers to go back inside his house and that they have a right to trim the tree. Rogers pleads with Lee to tell the crew to go back to the street.

Lee then asks Rogers if he bumped Rodriguez, and Rodriguez says, "Officer, I do feel threatened by him. He pushed me." The video, however, did not show any push and instead showed Rogers move in front of Rodriguez as Rodriguez was walking and a slight touch occur between the two men. Lee tells Rogers that he is "that close" to going to jail. Rogers responds that "they need to take me to court. I have not committed a crime. . . . I did not shove him." Rogers tells the crew that they can climb the fence to trim the tree and then he will take it

5

up in court but they are not to cut his padlock off the gate.

Menough then says to Lee: "Officer, please remove this threat so we can get on with our work." Lee tells Rogers that if he is sitting in jail, they will still trim his tree. Rogers reminds Lee that he has asked him to leave, to which Lee responds that he is just doing his job. Rogers then tells Lee, "There is no immediate danger here. There is no immediate danger from this tree." Lee says the quickest way to peace is to place Rogers in handcuffs. Rogers says that they should have come and trimmed the tree at Rogers' direction as they had agreed.

Lee asks Rogers if he is going to let them do their job, and Rogers responds, "no." Lee then takes out his handcuffs and tells Rogers that he is running out of options and may need to call Fort Bend County to come take Rogers to jail. Rogers says that he does not want to go to jail and "all they had to do was call me back." Again, Lee asks if Rogers is going to let them do their job. When Rogers says "no" again, Lee tells him, "I am about to arrest you." Lee then places the handcuffs on Rogers and tells him he is under arrest. Lee also says, "Sorry about it." Rogers offers no resistance and allows himself to be easily led to his garage.

Lee calls the Fort Bend County Sheriff's Office and reports a disturbance, saying that he is with a CenterPoint crew and a resident was giving them a hard time and threatening the tree cutting crew. As they wait in the driveway, Rogers tells Lee that he went to CenterPoint the day before to talk to them to try to avoid this and that he was told by a CenterPoint employee that they do not cut V and L shapes in trees in the Memorial and River Oaks areas of Houston.

At one point, Lee offers to uncuff Rogers if he agrees not to interfere with the crew. Rogers responds that he will stand in their way and keep them from cutting the tree. Lee tells Rogers that he should have handcuffed Rogers when Rogers got the baseball bat. Rogers tells Lee, "They have made you their goon.

6

They made you come here and arrest me on my own property." Rogers further states that he is not blaming Lee and knows that he has a job to do. Later, Rogers tells Lee, "They caused you to put me in restraints." Lee neither affirms nor denies these statements. In the background of the video, the Davey Tree crew can be seen removing and shredding a considerable number of large tree limbs.

Eventually, Fort Bend County Sheriff's deputies arrive on the scene. Lee tells one of the deputies that CenterPoint had tried to reach an agreement but could not, Rogers got a baseball bat and chest-bumped a crew member, and that Lee felt he had no choice but to handcuff Rogers. When the deputy asks whether Rogers assaulted one of the crew members, Lee says yes and identifies Rodriguez. While the deputy is talking to Rodriguez, Rogers remarks to Lee that he got the baseball bat when Menough walked away angrily and returned with the pair of bolt cutters.

Menough then walks over to Lee and tells him Rodriguez is not pressing charges and says the situation was unusual because customers "usually fold" when the police show up. Rodriguez subsequently tells Lee that on a prior visit, Rogers came out with a firearm, an accusation Rogers earlier denied. Rogers subsequently tells Lee that after the previous encounter, the crew members called the police but did not tell the police about any firearm. He says that they are lying about the firearm and that he did not come out with a gun; in fact, he had invited them to come to his home.

Toward the end of the video, the Fort Bend deputy asks Lee if he told Rogers he was being detained. Lee acknowledged that he told Rogers he was under arrest. Although it is not shown on the video, it is undisputed that Rogers was released shortly thereafter and no charges were filed against him.

Rogers sued CenterPoint, Davey Tree, and the City, raising claims for false imprisonment, intentional infliction of emotional distress, invasion of privacy by

intrusion on seclusion, tortious interference with an existing contract, and violations of the Texas Constitution. CenterPoint and Davey Tree each filed combined traditional and no-evidence motions for summary judgment on each of Rogers' claims. In his responses to the motions, Rogers expressly abandoned his claims for intentional infliction of emotional distress, tortious interference with a contract, and violations of the Texas Constitution against CenterPoint and Davey Tree. The City filed a plea to the jurisdiction asserting governmental immunity and mootness. The trial court granted CenterPoint's and Davey Tree's motions for summary judgment as well as the City's plea to the jurisdiction. On appeal, Rogers challenges the trial court's granting of the summary judgments and the plea to the jurisdiction.

### *Discussion*

Rogers raises 15 issues on appeal; however, the argument portion of his brief does not identify which argument supports which issue. Consequently, we will organize our discussion based on the way Rogers organized his argument and not based on his discrete issues. We will begin by addressing Rogers' challenges to the summary judgments favoring CenterPoint and Davey Tree. Rogers first asserts that the trial court erred in overruling certain objections he made to the summary judgment motions and evidence. Rogers also challenges the grants of summary judgment against his false imprisonment and intrusion on seclusion claims. We then will turn to Rogers' challenge to CenterPoint's plea to the jurisdiction.[1]

### I. Summary Judgments for CenterPoint and Davey Tree

---

[1] Rogers has represented himself pro se in the trial court and in this appeal. Pro se litigants and appellants are held to the same standards as licensed attorneys and must comply with applicable laws and procedures. *See Tran v. Nguyen*, 480 S.W.3d 119, 132–33 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Ramey v. Fed. Home Loan Mortg. Corp.*, No. 14-14-00147-CV, 2015 WL 3751539, at *2 (Tex. App.—Houston [14th Dist.] June 16, 2015, no pet.).

**A. Standards of Review**

We review a trial court's grant of summary judgment under a de novo standard. *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013) (per curiam). In a traditional motion for summary judgment, the movant must state specific grounds supporting judgment, and a defendant who conclusively negates at least one essential element of a cause of action is entitled to judgment. Tex. R. Civ. P. 166a(c); *Nall*, 404 S.W.3d at 555. If the movant's motion and summary-judgment evidence conclusively establish a right to judgment as a matter of law, the burden then shifts to the nonmovant to raise a genuine issue of material fact sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000).

In a no-evidence motion, the movant contends that the nonmovant can produce no evidence supporting one or more essential elements of a claim for which the nonmovant would bear the burden of proof at trial. Tex. R. Civ. P. 166a(i); *Boerjan v. Rodriguez*, 436 S.W.3d 307, 310 (Tex. 2014). The trial court must grant a no-evidence motion unless the nonmovant raises a genuine issue of material fact on each challenged element. Tex. R. Civ. P. 166a(i); *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam).

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When a party moves for summary judgment on both traditional and no-evidence grounds, we generally address the no-evidence grounds first. *See Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

**B. Objections to Summary Judgment Evidence and Motions**

9

Rogers begins the section of his brief concerning the objections to the motions for summary judgment and summary judgment evidence by noting that he raised six objections to each motion and thirteen objections to evidence below and that the trial court did not rule on any of these objections. Rogers then attempts to incorporate his trial court objections into his appellate briefing simply by referencing them. But it is well settled that a party may not simply incorporate trial court arguments by reference and must actually present arguments on appeal. *See, e.g., Zurita v. Lombana*, 322 S.W.3d 463, 472 n.3 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *see also* Tex. R. App. P. 38.1. Accordingly, we will not address objections and arguments not presented in this appeal.

In his brief, Rogers makes three arguments concerning Davey Trees' motion and evidence, asserting specifically that Davey Tree: (1) filed its no-evidence motion prematurely because the period for discovery had not elapsed, (2) failed to timely disclose its legal theories and the factual basis of its defense as required by Texas Rule of Civil Procedure 194.2, and (3) failed to support its motion with competent summary judgment evidence. We find no merit in any of these assertions.

Pursuant to Rule of Civil Procedure 166a(i), a party may move for a no-evidence summary judgment after "[a]dequate time for discovery." Tex. R. Civ. P. 166a(i). In granting a no-evidence motion for summary judgment, a trial court implicitly holds that an adequate time for discovery passed before its consideration of the motion. *Chamie v. Mem'l Hermann Health Sys.*, 561 S.W.3d 253, 256–57 (Tex. App.—Houston [14th Dist.] 2018, no pet.). When a nonmovant contends he has not had an adequate opportunity for discovery before a summary-judgment hearing or that there has not been adequate time for discovery under Texas Rule of Civil Procedure 166a(i), the nonmovant must file either an affidavit explaining the

need for further discovery or a verified motion for continuance. *See Tenneco, Inc. v. Enter. Prods., Co.*, 925 S.W.2d 640, 647 (Tex. 1996); *Schied v. Merritt*, No. 01-15-00466-CV, 2016 WL 3751619, at *4 (Tex. App.—Houston [1st Dist.] July 12, 2016, no pet.) (mem. op.). Rogers did neither and thus has failed to demonstrate any error occurred in the trial court in regard to the timing of Davey Tree's motion. *See Tenneco*, 925 S.W.2d at 647; *Schied*, 2016 WL 3751619, at *4.

Besides stating that Davey Tree failed to timely disclose its legal theories and the factual basis of its defense as required by Texas Rule of Civil Procedure 194.2, Rogers does not explain how such failure means that the trial court erred in granting summary judgment. We will not make Rogers' argument for him. *See* Tex. R. App. P. 38.1(i); *Dunsmore v. Univ. of Tex. Med. Branch at Galveston*, No. 14-16-00166-CV, 2017 WL 3568519, at *2 (Tex. App.—Houston [14th Dist.] Aug. 17, 2017, no pet.) (mem. op.).

Lastly, Rogers generically asserts that Davey Tree did not produce admissible evidence in support of its motion. Rogers does not, however, offer any specific critique of any particular piece of evidence Davey Tree attached to its motion. This assertion therefore presents nothing for review. *See* Tex. R. App. P. 38.1(i); *Dunsmore*, 2017 WL 3568519, at *2.

### C. False Imprisonment

We now turn to Rogers' specific challenges to the summary judgments favoring Davey Tree and CenterPoint on Rogers' claim for false imprisonment. To establish a claim for false imprisonment, a claimant must show: (1) a willful detention, (2) without consent, and (3) without authority of law. *Wal–Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002); *Davis v. Prosperity Bank*, 383 S.W.3d 795, 799 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

11

Davey Tree and CenterPoint each filed a motion for summary judgment that combined their no-evidence and traditional grounds. In the no-evidence portions of the motions, Davey Tree and CenterPoint each asserted that Rogers could produce no evidence to support any of the three elements of false imprisonment.[2] In the traditional portions of their motions, Davey Tree and CenterPoint each argued that they did not detain Rogers or cause him to be detained (pertaining to the first element) and that Rogers was lawfully arrested because he was breaching the peace, threatening people, and had assaulted a Davey Tree employee (pertaining to the third element).

We agree that Rogers presented no evidence that Davey Tree was responsible for his detention and therefore need not address the other grounds or elements as they pertain to Davey Tree. We also conclude that Rogers presented more than a scintilla of evidence regarding each element of his false imprisonment claim against CenterPoint and CenterPoint did not conclusively negate any of the elements. Accordingly, the trial court properly granted summary judgment favoring Davey Tree on the false imprisonment claim but erroneously granted summary judgment favoring CenterPoint on that claim.

### 1. Willful Detention

Rogers does not assert that Davey Tree or CenterPoint employees personally detained him; however, in Texas, liability for false imprisonment may extend

---

[2] It could be argued that the no-evidence grounds in CenterPoint's motion were legally insufficient to support summary judgment. *See Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 695–96 (Tex. 2017) ("[A] no-evidence motion that lists each element of the plaintiff's claim and then asserts that the plaintiff has no evidence to support 'one or more' or 'any of' those elements is insufficient to support summary judgment because this language does not clearly identify which elements, whether some or all, are challenged."); *Hamilton as Tr. of Joan Carol DeYoung-Burland Tr. v. Maynard*, No. 01-19-00925-CV, 2020 WL 6787514, at *2 (Tex. App.—Houston [1st Dist.] Nov. 19, 2020, no pet.) (mem. op.). For purposes of this opinion, we presume without deciding that the grounds were sufficient.

beyond those who actually detained the complaining party to those who requested or directed the detention. *See Rodriguez*, 92 S.W.3d at 507. Indeed, as we have previously stated, "any conduct that was intended to cause the detention of another, and in fact caused the detention, may satisfy the first element of the false-imprisonment claim." *Davis*, 383 S.W.3d at 800 (citing *Rodriguez*, 92 S.W.3d at 507). This causation standard is typically referred to as "instigation" of the false imprisonment. *See, e.g., Rodriguez*, 92 S.W.3d at 507; *Davis*, 383 S.W.3d at 800. "[T]o prove instigation a plaintiff must show that the defendant clearly directed or requested the arrest." *Rodriguez*, 92 S.W.3d at 507. In other words, "[i]n the case of an arrest, [instigation] is the equivalent, in words or conduct, of 'Officer, arrest that man!'" *Id*. (quoting Restatement (Second) of Torts §45A cmt. c).

For a third party to be liable for instigation, "the act of arrest [must be] made by the officer, not of his or her own volition, but to carry out the request of the defendant." *Id*. (quoting 32 Am. Jur. 2d *False Imprisonment* § 41 (1995)). A third party who merely reports a crime and identifies a suspect to law enforcement authorities but does not request or direct an arrest or attempt to persuade or influence the authorities into making an arrest cannot be held liable for instigating a subsequent false imprisonment. *Id*.; *Davis*, 383 S.W.3d at 800. However, a third party who instigates a false imprisonment "is not protected by his reasonable belief that the officer or other person who makes the arrest has legal authority to make it, or that the arrest is fully justified." Restatement (Second) of Torts § 45A cmt. d.

### a. Davey Tree

Rogers contends that Davey Tree instigated Sergeant Lee's detention of Rogers when Davey Tree employee Rodriguez told Lee "I do feel threatened by him, he pushed me, you saw that." The video from Lee's bodycam supports that Rodriguez made these statements. Although Rogers asserts in his brief that

13

Rodriguez also told Lee to "arrest him," meaning Rogers, no such words are audible on the video. Under the circumstances, the fact Rodriguez made these statements to Lee does not create a fact issue as to whether he instigated Lee's detention of Rogers. Lee was present for the entire encounter. Although Rodriguez said, "he pushed me," which is inaccurate, Lee appeared to reject that description and twice told Rogers "you bumped him," which is a more accurate description of what occurred. Moreover, as will be discussed in more detail below, the video supports the conclusion that Lee detained Rogers either because of what he himself had observed or because he was directed to do so by CenterPoint employee Menough. The video does not support the conclusion that Lee detained Rogers because Rodriguez directed or requested he do so. Because Rogers failed to present more than a scintilla of evidence that Davey Tree instigated the detention of Rogers, the trial court properly granted summary judgment favoring Davey Tree on Rogers' false imprisonment claim. *See Hamilton*, 249 S.W.3d at 426; *Rodriguez*, 92 S.W.3d at 507; *Davis*, 383 S.W.3d at 800.

### b. CenterPoint

CenterPoint undisputedly hired Lee to accompany its employee, Menough, and the Davey Tree work crew to Rogers' house. Again, Rogers appears to rely primarily on statements recorded in the video to support his assertion that CenterPoint instigated his detention.[3] Conversely, CenterPoint asserted in its motion that the video conclusively shows that no CenterPoint employee

---

[3] Rogers' arguments in relation to CenterPoint are somewhat unclear and rely largely on the same arguments he made in regard to Davey Tree. He does, however, reference the bodycam video as containing evidence throughout his brief, and we conclude he has presented sufficient argument and citation to authority and the record to challenge the merits of the summary judgment favoring CenterPoint. *See* Tex. R. App. P. 38.1(i) (requiring that appellate briefs "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

14

participated in Lee's detention of Rogers or encouraged Lee to detain Rogers. The video is therefore key to both the no evidence and the traditional motions for summary judgment on this element.

The video shows that when Rogers first walked towards the gate at the side of his house, as the crew also headed in that direction, Menough told Lee, "I want you to arrest him and put him in your car. He is stopping our progress." After Lee told Rogers that he was "that close" to going to jail, Rogers responded that "they need to take me to court. I have not committed a crime." Rogers also told the crew that they could climb the fence to trim the tree and he would take it up in court but they were not to cut his padlock off the gate. Menough then said to Lee: "Officer, please remove this threat so we can get on with our work." Lee asked Rogers twice if he was going to let the crew do their job. After Rogers responded "no" for the second time, Lee placed handcuffs on Rogers and told him he was under arrest. Subsequently, Lee offered to remove the handcuffs if Rogers agreed to let the crew do their work unhindered, an offer Lee declined.

Based on these exchanges, a reasonable juror could conclude that Lee detained Rogers because Menough requested or directed him to do so. Lee was working for CenterPoint. Menough was CenterPoint's onsite representative. Menough twice directed Lee to arrest or remove Rogers because he was preventing the crew from performing its work. Lee detained Rogers only after Rogers refused to get out of the crew's way and offered to release Rogers if he let the crew do their work.

Although the video also contains indications Lee may have acted of his own volition because Rogers was breaching the peace—e.g., Lee told the Fort Bend Sheriff's deputy that he felt he had no choice but to arrest Rogers after he bumped Rodriguez and Lee removed a bat from Rogers' hand in the garage—the evidence

15

at least raises a material issue of fact as to whether Lee detained Rogers of his own volition or to carry out Menough's request. *See Hamilton*, 249 S.W.3d at 426; *Rodriguez*, 92 S.W.3d at 507; *Davis*, 383 S.W.3d at 800; *see also Valence Operating*, 164 S.W.3d at 661 (explaining that in reviewing a summary judgment, we indulge every reasonable inference and resolve any doubts in the nonmovant's favor).

### 2. Without Consent

Although in its motion, CenterPoint appears to argue that Rogers could produce no evidence that he was detained without consent, CenterPoint did not raise a traditional ground on this element, and the video clearly shows Rogers did not consent to the detention. To the contrary, Rogers repeatedly and consistently asked Lee to leave his property and asked to not be arrested. Accordingly, the trial court erred to the extent it based summary judgment favoring CenterPoint on this ground.

### 3. Without Authority of Law

The third and final element of false imprisonment is that the arrest or detention must have occurred without authority of law. Generally, legal authority to arrest is shown in the false imprisonment context either by procurement of an arrest warrant or by a showing of probable cause. *See, e.g.*, *Brice v. Hanna*, No. 03-09-00454-CV, 2010 WL 5019468, at *5 (Tex. App.—Austin Dec. 10, 2010, no pet.) (mem. op.); *Wal–Mart Stores v. Odem*, 929 S.W.2d 513, 519 (Tex. App.—San Antonio 1996, writ denied). Police officers may also legally, temporarily detain individuals for other purposes, including officer safety and investigation. *See generally Mount v. State*, 217 S.W.3d 716, 724 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Rogers argues that his refusal to allow access to the easement was a civil rather than a criminal matter and did not provide Lee with probable

16

cause to arrest him. CenterPoint argued in its motion that the detention of Rogers was legally authorized because Rogers disobeyed Lee's instructions, shouted obscenities, assaulted Rodriguez, and threatened people with a bat. Once again, both sides cite the bodycam video as evidence to support their claims.

As discussed above, one inference a reasonable juror could make from the video is that Lee would not have arrested Rogers if at any point Rogers had gotten out of the crew's way. Lee had been hired by CenterPoint to accompany their representative, Menough, and the Davey Tree crew to Rogers' house. While there, Menough twice directed Lee to arrest or remove Rogers so that the crew could do its job. Lee arrested Rogers only after twice asking Rogers if he was going to let the crew do its job and Rogers responding "no" both times. Lee offered to release Rogers if he agreed not to interfere with the work. These facts suggest Rogers was arrested only because he prevented the work crew from accessing the CenterPoint easement in Rogers' backyard, not for shouting obscenities, bumping into Rodriguez, or picking up a baseball bat, which he immediately relinquished. As explained, in reviewing a summary judgment, we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *See Valence Operating*, 164 S.W.3d at 661.[4] CenterPoint has not and does not assert that an individual's preventing access to an easement by itself legally authorizes an arrest or that Rogers broke the law solely by disobeying Lee's instructions to allow the crew to do its work. CenterPoint does not cite any such law.

---

[4] Viewing the evidence in the light most favorable to Rogers, it could be said that the video shows Rogers and Rodriguez both moving when they bumped into each other, and Rogers picked up the bat only after seeing Menough coming back toward Rogers' property with a large pair of bolt cutters. Rogers did not leave the garage with the bat and immediately relinquished it when Lee put his hands on the bat. Also, statements during the video and in the letter Rogers sent to CenterPoint indicate he believed he had an agreement with CenterPoint that they could cut the tree as long as he had input in how the tree was cut and Rogers believed CenterPoint was violating that agreement by coming to his house with a police escort and attempting to gain entry to his backyard without allowing the allegedly agreed input.

The summary judgment record contains evidence raising fact issues regarding whether CenterPoint instigated Rogers' arrest and whether the arrest was without his consent and without authority of law. CenterPoint did not present evidence conclusively establishing that it did not instigate the arrest or that the arrest was lawful. Accordingly, the trial court erred in granting summary judgment favoring CenterPoint on Rogers' false imprisonment claim.

### C. Intrusion on Seclusion

The trial court also granted summary judgment favoring Davey Tree and CenterPoint on Rogers' invasion of privacy claim. Texas common law recognizes an individual's right to privacy. *See Billings v. Atkinson*, 489 S.W.2d 858, 860 (Tex. 1973). The Texas Constitution also guarantees the sanctity of the home and person from unreasonable intrusion. Tex. Const. art. 1, §§ 9, 25; *Tex. State Emps. Union v. Tex. Dep't of Mental Health & Mental Retardation*, 746 S.W.2d 203, 205 (Tex. 1987). On these bases, Texas recognizes several distinct types of actionable invasions of privacy. *See Cain v. Hearst Corp.*, 878 S.W.2d 577, 578 (Tex. 1994) (listing three forms of accepted invasion of privacy claims and rejecting a fourth); *Moore v. Bushman*, 559 S.W.3d 645, 649 & n.2 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

To establish an actionable invasion of privacy of the type Rogers alleges—intrusion on seclusion—a plaintiff must show: (1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns; (2) which would be highly offensive to a reasonable person; and (3) that caused injury. *See Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993); *Fawcett v. Grosu*, 498 S.W.3d 650, 664 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). This cause of action essentially asserts that the defendant violated the plaintiff's right to be left alone. *See Fawcett*, 498 S.W.3d at 664. In other words, it

18

seeks recovery for the defendant's improper intrusion into an area where the appellee has manifested an expectation of privacy. *See id*. Intrusion on seclusion includes a physical invasion of a person's property as well as eavesdropping upon private conversations with the aid of wiretaps or microphones or spying. *Moore*, 559 S.W.3d at 649. In evaluating the "highly offensive" element, courts have required that the intrusion be unreasonable, unjustified, or unwarranted. *Moricz v. Long*, No. 06-17-00011-CV, 2017 WL 3081512, at *5 (Tex. App.—Texarkana July 20, 2017, no pet.) (mem. op.) (citing *Billings v. Atkinson*, 489 S.W.2d 858, 860 (Tex. 1973)).

In their motions, Davey Tree and CenterPoint both challenged the second element of Rogers' claim that the intrusion in question would be highly offensive to a reasonable person.[5] One of the arguments they assert is that Rogers cannot prove the alleged intrusion in this case would be highly offensive to a reasonable person because the alleged intrusion involved CenterPoint exercising a property right that it possessed under the tariff and aerial easement. As set forth above, the tariff and the easement each gave CenterPoint a right of access to Rogers' property to trim trees that in CenterPoint's opinion constituted a hazard. It is established and undisputed that the CenterPoint and Davey Tree employees went on Rogers' property to exercise that right and trim his tree away from the power line. They did so during daylight hours after giving him notice.

Rogers first argues that the reasonable person standard in the second element of intrusion on seclusion must be determined by a jury and not as a matter of law. Although the second element typically presents a question of fact for a jury, summary judgment may be proper when a plaintiff presents no evidence on the

---

[5] DaveyTree and CenterPoint raised substantially similar grounds for summary judgment on the intrusion on seclusion claims, and Rogers made the same arguments in his responses to those two motions, so we will discuss the arguments together.

element in response to a no-evidence motion for summary judgment or a defendant conclusively negates the element in a traditional motion for summary judgment. *See*, *e.g.*, *Prince v. Nat'l Smart Healthcare Servs., Inc.*, No. 01-09-00916-CV, 2011 WL 1632165, at *5 (Tex. App.—Houston [1st Dist.] Apr. 28, 2011, no pet.) (mem. op.) (affirming summary judgment because plaintiff failed to raise a question of material fact as to each element of her intrusion on seclusion claim); *Latimer v. Mem'l Hermann Hosp. Sys.*, No. 14-09-00925-CV, 2011 WL 175504, at *2 (Tex. App.—Houston [14th Dist.] Jan. 20, 2011, no pet.) (mem. op.) (affirming summary judgment because defendant conclusively established the conduct in question would not be highly offensive to a reasonable person).

Rogers also argued in his responses to the motions that CenterPoint and the Davey Tree crew entered his backyard without his permission, cut his padlock, and ignored the "no trespassing" sign on his fence. He further asserted that such entry was highly offensive because it caused a "fight or flight" response in him as he believed he was at risk of serious injury or death and suffered mental anguish as a result of the threat of arrest. He complains that CenterPoint brought a police officer to his house and directed the officer to arrest him and this caused him to feel humiliation and outrage. He said that the trees presented no current danger and he could have trimmed them himself or hired someone to do so.[6]

We agree with CenterPoint and Davey Tree that their exercise of the right to

---

[6] Rogers makes additional arguments in his brief that he did not make in his responses to summary judgment in the trial court; for example, he argues that the remedy for failure to provide access under the tariff was suspension of service and not to break in and have him arrested and that the tree did not in fact need to be trimmed. Issues not presented in the trial court in response to a motion for summary judgment generally may not be considered on appeal as grounds for reversal of the judgment. *See* Tex. R. Civ. P. 166a(c); *McConnell v. Southside I.S.D.*, 858 S.W.2d 337, 343 (Tex. 1993); *High Rd. on Dawson v. Benevolent & Protective Ord. of Elks of the United States of Am., Inc.*, 608 S.W.3d 869, 888 (Tex. App.—Houston [14th Dist.] 2020, pet. filed).

enter Rogers' backyard to trim the tree would not be highly offensive to a reasonable person as a matter of law. Rogers bought his property subject to the easement, and the tariff was a matter of public record. As stated, CenterPoint and Davey Tree came during daylight hours after having provided Rogers with notice of their intent to access the easement and trim the tree. Reasonably exercising an easement right during daytime hours that the homeowner was aware of and was given notice of is not an actionable intrusion on seclusion; it is not unreasonable, unjustified, or unwarranted. *See Moricz*, 2017 WL 3081512, at \*5. To hold otherwise would risk authorizing such claims against anyone attempting to utilize an easement across another person's property.

Rogers' complaints that CenterPoint's appearance with a police officer caused him to have a fight or flight response, he suffered mental anguish, humiliation, and outrage due to the threat of arrest, and he could have had the tree trimmed by someone else do not alter the analysis for this claim. CenterPoint had a right of access and an easement and used them. Accordingly, the trial court did not err in granting summary judgment favoring CenterPoint and Davey Tree on Rogers intrusion on seclusion claim.

## II. The City's Plea to the Jurisdiction

Rogers' claims against the City included both intentional torts (false imprisonment, intentional infliction of emotional distress, intrusion on seclusion, and tortious interference with a contract) and alleged violations of the Texas Constitution's Bill of Rights. For relief, Rogers sought monetary damages and declarations regarding his rights. On appeal, Rogers asserts that the trial court erred in dismissing his intentional tort claims because the actions of which he complains were proprietary functions undertaken by the City and not governmental functions for which the City could have claimed governmental immunity. Rogers maintains

21

the trial court erred in dismissing his constitutional claims because the City is not immune from suits seeking equitable remedies for violations of the Texas Constitution, among other arguments. We affirm the trial court's dismissal of Rogers' claims against the City.

## A. Standard of Review

A plea to the jurisdiction is a dilatory plea used to defeat a claim without regard to whether the claim has merit. *Bland I.S.D. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Such a plea challenges a trial court's subject-matter jurisdiction. *Id*. We therefore review de novo a trial court's ruling on a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). A plaintiff has the burden to plead facts affirmatively showing that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). In determining whether this burden has been satisfied, we must construe the pleadings liberally in the plaintiff's favor and deny the plea if the plaintiff has alleged facts affirmatively demonstrating jurisdiction to hear the case. *Miranda*, 133 S.W.3d at 226. We may also consider evidence submitted on the jurisdictional issues and must do so when necessary to resolve those issues. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012). We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *Miranda*, 133 S.W.3d at 228. The plea must be granted if the plaintiff's pleadings affirmatively negate the existence of jurisdiction or if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction. *See Heckman*, 369 S.W.3d at 150.

## B. Governmental Functions and the Intentional Tort Claims

As stated, Rogers asserts the trial court erred in dismissing his intentional tort claims against the City because he says the City, through Sergeant Lee, was

22

engaged in a proprietary function for which the City does not enjoy immunity from suit. Specifically in his petition, Rogers alleged that Lee came on his property and arrested him at the direction of CenterPoint and that this conduct was a proprietary and not governmental function. The City argues that to the extent Lee's actions could be attributed to the City under respondeat superior, those actions constituted a governmental function as defined by the Texas Legislature and thus the City is immune from Rogers' claims. *See generally Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 846 (Tex. 2018) (discussing the doctrine of respondeat superior in the context of governmental entities).[7]

The state itself generally has sovereign immunity from suit and liability. *See Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 429–30 (Tex. 2016). Political subdivisions of the state, including municipalities, share in this immunity when they act in a governmental capacity; such immunity is then called "governmental immunity." *See id*. Political subdivisions, however, have no inherent immunity of their own, so when they act in a proprietary, non-governmental capacity, they lack immunity. *See id*.

In 1987, the Texas Constitution was amended to authorize the legislature to define which municipal functions are proprietary and which are governmental. *See* Tex. Const. art. XI, § 13(a). Consequently, the legislature set forth applicable definitions and non-exclusive lists of examples in section 101.0215 of the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code § 101.0215. Generally, governmental functions "are those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised

---

[7] Rogers attached to his response to the plea to the jurisdiction a brief unsworn declaration, a set of City of Houston ordinances, the City's answers to his request for admissions, and an invoice related to Lee's services on the day in question. The City did not offer any evidence in support of its plea.

by the municipality in the interest of the general public." *Id*. § 101.0215(a). Proprietary functions "are those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality." *Id*. § 101.0215(b). If a function is included in the nonexclusive list of governmental functions, it has been deemed governmental in nature by the legislature and we have no discretion or authority to hold otherwise. *Ethio Exp. Shuttle Serv., Inc. v. City of Houston*, 164 S.W.3d 751, 755–56 (Tex. App.—Houston [14th Dist.] 2005, no pet) (citing Tex. Civ. Prac. & Rem. Code § 101.0215(c) ("The proprietary functions of a municipality do not include those governmental activities listed under Subsection (a).")); *see also City of San Antonio v. Butler*, 131 S.W.3d 170, 177 (Tex. App.—San Antonio 2004, pet. denied) ("[A]ll activities associated with the operation of one of the government functions listed in section 101.0215(a) are governmental and cannot be considered proprietary, regardless of the city's motive for engaging in the activity."). Included in the list of governmental functions is "(1) police and fire protection and control." *Id*. § 101.0215(a)(1).

Rogers contends that the City was performing a proprietary act because Lee was hired to provide off-duty police services to CenterPoint with the police department's approval. He asserts that this for-hire service was not necessary for, mandated by, or even related to the governmental function of providing police protection, as listed in section 101.0215(a)(1).

As the City emphasizes, courts have respected the legislature's list and held certain activities constitute governmental functions because of their close relationship with categories expressly listed as such in section 101.0215(a). For example, in *Ethio*, we held that the City of Houston's decision regarding which company could buy a permit for an airport shuttle service was a governmental function because it directly related to three activities listed in section 101.0215(a):

24

airports, regulation of traffic, and transportation systems. 164 S.W.3d at 756 ("We would be remiss to hold that the City's activities are proprietary in a case in which they are so well aligned with the functions the Legislature has designated as governmental."). In *City of Houston v. Petroleum Traders Corp.*, we held that the City's fuel purchases were a governmental function because they related to specific tasks listed in section 101.0215(a), including police and fire protection. 261 S.W.3d 350, 356 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("Courts repeatedly have recognized that governmental functions encompass activities that are closely related to or necessary for performance of the governmental activities designated by statute.").

In *Martinez v. City of San Antonio*, the San Antonio Court of Appeals held that a crime prevention and reduction program implemented by the police department was "a function of law enforcement and a valid governmental use of police power" and thus a governmental function, even though it offered counseling services and job training. 220 S.W.3d 10, 15–16 (Tex. App.—San Antonio 2006, no pet.). In *City of El Paso v. Gomez-Parra*, the plaintiffs sued the city regarding a vehicle the city had seized and sold to the plaintiffs at an auction, and the court of appeals held that "[t]he sale of the vehicle at auction was an extension of the City's police and fire protection function and as such, the City engaged in an activity that touched on the category of police and fire control listed as a governmental function in section 101.0215(a)." 198 S.W.3d 364, 366 (Tex. App.—El Paso 2006, no pet.).

Here, Rogers alleges that Lee was hired by CenterPoint to provide off-duty police services and the City approved the hire. Ultimately, Rogers complains that Lee arrested him. Rogers does not assert that the City itself, apart from Lee's conduct on the day in question, committed any tort. To the extent the City could be held liable under respondeat superior for Lee's conduct on that day, we conclude

that the provision of police services, even by an off-duty officer, is still a part of "police and fire protection and control" and thus a governmental and not a proprietary function. The fact that Lee was being paid by CenterPoint and not the City and was off duty did not convert any conduct for which the City could be held liable into a proprietary function. *See* Tex. Civ. Prac. & Rem. Code § 101.0215(a). *Cf. Garza v. Harrison*, 574 S.W.3d 389, 403-04 (Tex. 2019) (holding police officer attempting to effect an arrest while off duty at a second job had a duty to act and was acting in his official capacity as a matter of law, even if the procedure used was improper); *Harris Cty. v. Gibbons*, 150 S.W.3d 877, 882 (Tex. App.— Houston [14th Dist.] 2004, no pet.) ("If an officer is performing a public duty, such as enforcement of general laws, he is acting in the course and scope of his employment as a police officer even if the [private] employer directed him to perform the duty.") (internal quotation marks omitted).

Permitting off-duty police officers to work outside jobs providing police services is closely related to the City's governmental function of providing police protection and control in the interest of the general public. *See* Tex. Civ. Prac. & Rem. Code § 101.0215(a). These services therefore were governmental for purposes of determining whether the City enjoyed governmental immunity on Rogers' intentional tort claims. *See Ethio Exp. Shuttle*, 164 S.W.3d at 755–56. Rogers has not and does not assert any waiver of governmental immunity for these claims. Accordingly, the trial court properly dismissed these claims against the City.

### C. Equitable Relief and the Constitutional Claims

In his petition, Rogers asserted that governmental immunity does not bar claims for equitable relief brought under the Texas Bill of Rights. He then specifically alleged violations of Article I of the Texas Constitution, sections 3

26

(equal rights), 9 (unreasonable search and seizure), and 19 (due course of law). Rogers subsequently abandoned his equal rights and search and seizure claims and now focuses solely on his due course of law claim. For relief on his constitutional claims against the City, Rogers sought declarations under the Uniform Declaratory Judgments Act ("UDJA") that (1) Sergeant Lee was acting outside the scope of his authority when he intruded on Rogers' property, (2) Rogers was denied due course of law, and (3) Rogers maintained a reasonable expectation of privacy. Tex. Civ. Prac. & Rem. Code §§ 37.001-.011. In its plea to the jurisdiction, the City asserted that Rogers' constitutional claims were moot.

As discussed above, as a political subdivision of the state, the City enjoys governmental immunity. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 330 & n.11 (Tex. 2006). Governmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether. *Id*. at 332. Immunity from suit does not extend to claims arising from an unconstitutional act. *Sakonchick v. Travis Cty., Tex.*, No. 03-19-00323-CV, 2019 WL 5582241, at *2 (Tex. App.—Austin Oct. 30, 2019, no pet.) (mem. op.) (citing *City of Houston v. Downstream Envtl., L.L.C.*, 444 S.W.3d 24, 38, 39–40 (Tex. App.—Houston [1st Dist.] 2014, pet. denied)). In other words, while a claimant cannot sue a governmental entity for damages for a violation of the Texas Constitution, a claimant can seek equitable relief against a political subdivision for a violation of the Texas Bill of Rights. *See e.g., Tex. A&M Univ. v. Doe*, No. 10-19-00057-CV, 2020 WL 7866878, at *3 (Tex. App.—Waco Dec. 30, 2020, no pet.) (mem. op.); *Downstream Envtl.*, 444 S.W.3d at 38; *see also City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007); *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995). For a court to exercise jurisdiction in such a case, however, the pleaded

27

claim must be viable. *See Doe*, 2020 WL 7866878, at *3; *Downstream Envtl.*, 444 S.W.3d at 38.

As stated, the City asserted in its plea that Rogers' due course claim was moot. A case is moot when the court's action on the merits cannot affect the parties' rights or interests. *Metro. Transit Auth. of Harris Cty. v. Douglas*, 544 S.W.3d 486, 493 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). The mootness doctrine dictates that courts must avoid rendering advisory opinions by only deciding issues that present a live controversy at the time of the decision. *See id*. It perhaps goes without saying that if a claim is moot, it is not viable.

In his brief, Rogers asserts that the question of mootness is not properly before this court, apparently under the misconception that the City's plea to the jurisdiction could only properly raise immunity as grounds for dismissal. Mootness, however, is properly raised in a plea to the jurisdiction. *See, e.g., Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 22 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *Dallas Cty. Republican Party v. Dallas Cty. Democratic Party*, No. 05-18-00916-CV, 2019 WL 4010776, at *3 (Tex. App.—Dallas Aug. 26, 2019, pet. denied) (mem. op.).

Rogers additionally argues that the trial court had jurisdiction under the UDJA to make a declaration of his rights, status, or other legal relations, citing Texas Civil Practice & Remedies Code section 37.004(a). As the City points out, however, the UDJA generally does not alter a trial court's jurisdiction but is merely a procedural device for deciding matters already within a court's jurisdiction. *See Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011); *see also City of El Paso v. Heinrich*, 284 S.W.3d 366, 374 (Tex. 2009) ("[T]he declaratory judgment act cannot be used to circumvent immunity.")

Rogers does not make a specific argument about mootness. The remedies

Rogers seeks in his constitutional claim—*i.e.*, declarations that Lee was acting outside the scope of his authority, Rogers was denied due course of law, and Rogers maintained a reasonable expectation of privacy—would have no impact on a live controversy between Rogers and the City. He cannot sue the City for damages for the alleged violation of the Texas Constitution. *See Doe*, 2020 WL 7866878, at *3; *Downstream Envtl.*, 444 S.W.3d at 38. He does not request injunctive or other equitable relief. The declarations themselves would afford Rogers no relief from the City as he no longer faces the allegedly unconstitutional conduct about which he complains. Although not suggested by Rogers, even if he had sought injunctive relief, the notion that Lee or another HPD officer could again accompany a CenterPoint tree-trimming crew and arrest Rogers on his property is too speculative to render Rogers' constitutional claim viable. *Cf. Garcia v. City of Willis*, 593 S.W.3d 201, 207 (Tex. 2019) (holding as a matter of standing that plaintiff's request for prospective relief related to city's operation of red-light cameras was too speculative).

Because Rogers' constitutional claim did not present a live controversy and a decision on the merits would have no effect on the parties' rights or interests, the claim is moot and thus not viable. *See Doe*, 2020 WL 7866878, at *3; *Douglas*, 544 S.W.3d at 493; *Downstream Envtl.*, 444 S.W.3d at 38. Accordingly, the trial court did not err in granting the City's plea to the jurisdiction and dismissing Rogers's constitutional claim.

## III. Conclusion

The trial court properly granted summary judgment favoring CenterPoint on Rogers' intrusion on seclusion claim and favoring Davey Tree on all claims. The trial court also properly dismissed all of Rogers' claims against the City. The trial court erred, however, in granting summary judgment favoring CenterPoint on

29

Rogers' false imprisonment claim. Consequently, we reverse and remand the false imprisonment claim against CenterPoint for further proceedings in accordance with this opinion and affirm the remainder of the judgment.


/s/    Frances Bourliot
       Justice


Panel consists of Justices Bourliot, Hassan, and Poissant.